11947

RAINES v. SANDERS *ET AL.*

(132 S. E., 581)

1. APPEAL AND ERROR—PROCEEDING TO ENFORCE MECHANICS' LIEN IS LAW CASE, PRECLUDING FINDINGS OF FACT UNLESS WHOLLY UNSUPPORTED BY EVIDENCE OR CONTROLLED BY ERRONEOUS CONCEPTION OF LAW.—Proceeding to establish and enforce mechanics' lien is a law case, unless wholly unsupported by evidence, or influenced or controlled by erroneous conception or application of law.

2. APPEAL AND ERROR.—Settlement of contested issues of fact by Circuit Judge in proceeding to enforce mechanics' liens is final and binding on Supreme Court.

Before TOWNSEND, J., Kershaw, July, 1924. Affirmed.

Action by J. E. Raines against J. W. A. Sanders, the Kirby Electrical Service Company, the Beam Lumber Company, the Shand Builders' Supply Company and others.

From the judgment the plaintiff and three last named defendants appeal.

The following is the decree of Judge Townsend directed to be reported:

### DECREE

This is a special proceeding for the enforcement of an alleged mechanic's lien. The testimony has been taken and reported by the master together with his findings of fact and conclusions of law. The matter was heard by me upon exceptions taken by the respondent, Sanders, to the master's findings and conclusions. The first question is, What was the contract between Raines and Dr. Sanders with reference to the dwelling house? The evidence clearly shows that Dr. Sanders was desirous to build a dwelling house, and met Raines, an experienced contractor, who showed him plans or a sketch, "Exhibit A," and furnished him an estimate, "Exhibit B," itemized, proposing $8,467.25 as the cost of the dwelling. Dr. Sanders then proposed cutting out certain items which reduced the estimated cost to about $7,300.00. Sanders testifies he then told Raines he could not put over $7,000 in the house, and Raines replied: "I think I can do it; we figured it down to a little over $7,000, and I think I can squeeze it down to $7,000"—and stated that his compensation for building the house would be $500. After further discussion, Dr. Sanders said: "Well, the whole thing will cost me $7,500?" Sanders testifies that Raines replied, "Yes." Whereupon Sanders testifies he said: "That is $500 more than I have to put in the house, but if you build that house like you describe here, for $7,500, including your commission, or compensation, go ahead and build it; if you can't build it for $7,500, you had better not start it." And Sanders testifies that Raines then agreed to take the contract to complete the house for that sum, furnishing the material and performing the work. Raines contradicts his testimony, and testifies that he declined to take the job at this price, and that he did not agree

to build the house and furnish the material for such, and testifies that he undertook the building without any set amount in view for expense, and that they were to try to get out as cheap as they could. Raines stated he told Sanders he would charge $500 as his compensation for supervising the work on the dwelling, including the first floor, stairway to second floor, and hall, and would furnish plans, tools, and a competent foreman, to be paid by Sanders, and would furnish all materials, approved by Sanders, and save him on every item he possibly could, and Raines testifies that both parties agreed to this latter plan for the work, and that he never heard any claim of a contract for $7,500 until in April, 1923.

The statement of Dr. Sanders as to the contract is corroborated by the testimony of his father, J. J. Sanders, and his wife, Mrs. M. L. Sanders, and also by C. W. Lee, a bricklayer employed by Raines, who testified: "Raines told him he had a contract to build the house, and it was going to cost about $7,500"—and by R. L. Kelley, brother-in-law of and witness for Raines, who testifies that Raines told him he was to do the job for Dr. Sanders for $7,000 and $500 for his services, but that extras added to the house and work on the drug store had run it over. Dr. Sanders' testimony is further corroborated by the circumstances that Raines took out fire insurance on the building while in course of construction in his name, which is the customary practice where the contractor carries the liability until the completion of the building; by testimony of John Reynolds, that the same workmen employed by Raines to work on the Sanders house were used by Cathey, the foreman employed by Raines in doing at the same time a small job on the house of Mr. James Team, and that these workmen carried material from the Sanders house to use in the Team's job; and the further circumstance that the material used in erecting the Sanders dwelling was bought by Raines in his own name, and not as agent for Dr. Sanders.

Upon the consideration of all the evidence in the case, I find that Raines undertook and contracted to build the dwelling for Dr. Sanders, in accordance with the plans which Raines submitted to Sanders, and for the entire price of $7,500. Here, I find from the evidence that Raines submitted the plans, prepared the bill of quantities which he estimated as necessary, and undertook to build the dwelling house in accordance with these plans, for the estimated amount, $7,000, plus $500 called his commissions, or compensation, and later, after commencing the work, agreed to give Dr. Sanders the benefit of any saving in the estimated quantities and expenses. I conclude, that Raines, an experienced contractor, must be presumed, under the evidence in this case, to have known and understood his business, and to have undertaken the work at his own risk. *Williams v. Fitzmaurice,* 3 H. & N., 844, cited in 4 Elliott, Contracts, § 3621. I further find from the evidence that Raines was not the agent of Dr. Sanders, or authorized to purchase on Dr. Sanders' account material to be used in the erection of the dwelling house. Where a contractor undertakes a job for a stipulated price, he impliedly undertakes to furnish everything reasonably necessary for the completion of the building.

The eleventh and fourteenth exceptions to the master's report are sustained.

I further find from the evidence that the contract for the building of the dwelling house was made between Raines and Dr. Sanders in November, 1922, and contemplated that the work would commence about the 1st of December, when it did commence, and, unless prevented by bad weather, should be completed within eight weeks, or by the 1st of February. The completion of the work was delayed by bad weather during this period; and I cannot say that the delay in completing the house was inexcusable under the contract. Hence, I conclude Dr. Sanders is not entitled to any offset against petitioner's claim on account of such delay.

The next injury involves a determination of the contract between Raines and Sanders with regard to the building of the drug store or office building and garage. It is obvious from the evidence produced that the contract for the building of these structures was essentially different from that relating to the building of the dwelling house in some particulars.

The contention of the defendant, Sanders, that under the contract for the drug store or office and garage, he was to furnish the material, and that the cost of the garage was not to exceed the sum of $100, and that of the drug store or office the sum of $1,000, inclusive of labor and materials, finds corroborative support in the testimony offered. The witness J. M. Smith, for example, testified in substance that he furnished some of the lumber for the dwelling house, and that the bill for the lumber was made out to the plaintiff; that Sanders had nothing to do with the buying of the lumber for the dwelling house; that Sanders bought other lumber, which was billed to him personally, and this lumber was for the drug store or office, barn, chicken house, fences, etc.; that the bill for the latter lumber was paid by Sanders and that for the lumber used for the dwelling house was paid for by the plaintiff. The evidence also shows that Sanders purchased and paid for a carload of brick for the offices, which fact is not in the least disputed by the plaintiff. Sanders also bought other material for the office. The plaintiff does not attempt to give in detail the amount expended by him on the office building. A careful review of the testimony sustains the contention of the defendant Sanders on this phase of the case.

The evidence disclosed that only one of the defendants, the Rush Lumber Company, attempted to give notice provided for by Section 5641 of the Code of Laws 1922, and an examination of the evidence on this point clearly shows that the record is not sufficient to establish such notice as would entitle this defendant to the protection of the statute,

or to a preferred status as against its codefendants in an equitable distribution of the balance found due by the defendant Sanders to the plaintiff.

The witness J. E. Campbell, an employee of the defendant Rush Lumber Company, testified in a vague and uncertain way that he notified the defendant Sanders of its claim for materials furnished by depositing a letter addressed to him in the post office. He could not recall the date of the letter, or when this alleged notice was given, and did not produce a copy of the same. He stated that he left a copy at an indefinite time with Mr. L. A. Wittkowsky, one of the attorneys for the defendant Sanders in this controversy. There is no evidence in the record to show that Mr. Wittkowsky was the agent of Sanders, or in any way representing him, except in a professional way for the purpose of this litigation. This fact in itself shows that copy of the notice which the witness testified that he left with Mr. Wittkowsky was not given him until after the controversy arose. The witness could not say how much of the material was furnished before or after the alleged letter was written. In reply to an inquiry tending to elicit this information, he said: "I have not any idea." The defendant Sanders testified positively that he never received any such letter or any other notice from this defendant. It is therefore apparent that the evidence offered is not sufficient to establish the notice contemplated by the provisions of the section above referred to, and it follows that the position of the defendant Rush Lumber Company cannot be more advantageous than its codefendants, Kirby Electrical Service Company, Beam Lumber Company, and Shand Builders' Supply Company, who also filed mechanics' liens against the defendant Sanders for the security of their claims, and who did not contend that any such notice was given by them.

While these defendants have not established a lien under the section referred to, or in any other legal manner; against the defendant Sanders, yet, as a matter of equity, any

amount found to be due by the defendant Sanders to the plaintiff should be paid these defendants in proportion to their respective claims before the plaintiff should receive any part thereof.

The claims of these defendants for materials furnished are as follows: Kirby Electrical Service Company, $177; Rush Lumber Company, $95.95; Beam Lumber Company, $503.87; and Shand Builders' Supply Company, $1,218.32.

While the plaintiff was an experienced contractor, the records disclose that only two rough pencil sketches were put in evidence by him as setting forth the plans of the dwelling house, without any formal specifications with regard to the character and grade of materials to be used. In determining, therefore, what changes were to be made in the original plan as agreed upon, or extra labor performed, and materials furnished and authorized by the defendant Sanders, recourse must be had to the testimony adduced in the cause with a view of ascertaining in what respect and to what extent the building as completed differs from the building originally contemplated by the parties in their contract. There is a sharp difference in the contention and the evidence of the parties. in regard to this matter, with the burden of proof resting on the plaintiff to establish his contention.

The plaintiff contends that the extras, namely a change from wood to a tile floor in the front porch and the completion of the rooms upstairs, amounted to $1198.51 on the house alone. The defendant Sanders is equally positive in his testimony that the only change authorized for which there was an agreement for an extra charge was a change of the front porch floor from wood to tile at an extra cost of $200. The defendant Sanders is emphatic in his testimony that the only changes made in the rooms upstairs from the plan contemplated and set out in the original contract were made at the suggestion of the plaintiff himself, and upon the latter's statement that such changes would not

be attended with any additional costs. The inquiry, must, therefore, be solved to a large degree from the conflicting testimony of the defendant Sanders and the plaintiff, and such other facts and circumstances of evidentiary value as may be disclosed in the record.

The plaintiff in his enumeration of the extras for which he demands compensation includes two unfinished book-cases. The defendant Sanders testifies that no such book-cases had ever been built in the house. The existence or nonexistence of such an article in the house is a physical fact that could be easily determined by observation. It is difficult to conceive that the defendant Sanders would make such a statement, under oath, if not true, when the physical fact could be easily established by an actual observation of the house, which was in easy distance of the courthouse where the testimony in the case was taken. It is very probable that the plaintiff is in error with regard to this item, as he lists it as "unfinished." The same observation is true with regard to the furnishing of the kitchen cabinet as an alleged extra item. While these items did not involve any great amount, or would not result in any material reduction of the amount claimed, yet they are selected as illustrative, to some extent, of facts and circumstances which sustain the reasonableness and reliability of the defendant Sanders' testimony, to which resort must be had, at times, in judicial inquiries in determining questions of fact where there is a sharp conflict in the testimony and no grounds for the imputation of dishonesty on the part of the witnesses.

A further extended or detailed discussion of the testimony on this question could serve no useful purpose and would unduly lengthen this decree. It is sufficient to say, that with the burden of proof resting on the plaintiff, and after a careful consideration of all the testimony, the issue must be determined against the contention of the plaintiff. I therefore conclude that the defendant Sanders is liable to the plaintiff as follows: Contract price of dwelling house,

including services, $7,500; extra compensation for tile on porch floor, $200; total cost under contract of drug store, $1,000; total contract cost of garage, $100—aggregating the sum of $8,800, on which the defendant is entitled to the following credits: Amount paid the plaintiff, $7,000; amount paid by the defendant Sanders for material and labor on drug store or office, $622.11; amount paid to complete dwelling house, $970.20; amount paid to complete the garage, $35—making the total amount of credits the sum of $8,627.31, leaving a balance due by the defendant Sanders to the plaintiff of $172.69 secured by lien on the premises.

Contrary to the conclusion of the master, no interest on this amount is allowable under the case of *Devereaux v. Taft,* 20 S. C., 555, in which the Court holds that interest is not authorized on an account secured by a mechanic's lien.

Wherefore, it is ordered, adjudged, and decreed:

(1) That the report of the master of Kershaw County be modified so as to conform to the conclusions herein announced.

(2) That the defendant Sanders is justly indebted, in accordance with the views hereinbefore announced, to the plaintiff, Raines, in the sum of $172.69 without interest.

(3) That within 60 days from the filing of this decree, the defendant J. W. A. Sanders, or his attorneys, do pay or tender to his codefendants, Kirby Electrical Service Company, Rush Lumber Company, Beam Lumber Company, Shand Builders' Supply Company, or their attorneys, the said sum of $172.69, to be proportioned according to the claims of the said defendants as set out hereinbefore.

(4) That, upon the failure of the said defendant, J. W. A. Sanders, to pay or tender the said sum to the said defendants, the premises described in the complaint be sold by the master of Kershaw County under the usual and proper conditions to satisfy in full the said claim of $172.69.

(5) That the Clerk of Court of Common Pleas for Kershaw County do forthwith make an appropriate entry on

the records in his office cancelling of record the alleged liens of the defendants Kirby Electrical Supply Company, Rush Lumber Company, Beam Lumber Company, and Shand Builders' Supply Company.

(6) That, upon the payment of the $172.69 herein found to be due to the plaintiff, the clerk of said Court enter a similar cancellation upon the record of the lien of the plaintiff herein.

(7) That either party to this suit is authorized to apply at the foot hereof for such other and further order, or orders, as may be necessary to carry out the conclusions herein announced.

(8) That the costs and disbursements of this action be paid by the defendant, J. W. Sanders.

*Messrs. D. W. Galloway, T. K. Trotter* and *Laurens T. Mills,* for appellants, cite: *Mechanic's lien established:* Civ. Code, 1922, Secs. 5639-41. *Notice of lien to owner authorizing improvement not necessary:* 129 S. C., 1. *Subcontractor to give notice of lien to owner before lien attaches:* Civ. Code 1922, Sec. 5641. *Interpretation of ambiguous contracts:* 117 S. E., 539.

*Messrs. L. A. Wittkowsky* and *M. L. Smith,* for appellant, cite: *Interest not allowed on accounts secured by mechanic's liens:* 20 S. C., 555. *Appellate jurisdiction of the Supreme Court:* Const. 1895, Art. 5, Sec. 4. *"Cases in chancery" defined:* 11 S. C., 316; 8 S. C., 61; 3 S. C., 531. *Appellate Court may review evidence in chancery case on appeal:* 122 S. C., 461; 74 S. C., 191; 9 S. C., 272; 8 S. C., 339; 6 S. C., 410; 5 S. C., 414. *Burden on appellant to show that findings of trial Judge on the facts are against the evidence:* 125 S. C., 60; 124 S. C., 506; 123 S. C., 346; 123 S. C., 327; 122 S. C., 327; 122 S. C., 238; 117 S. C., 536; 117 S. C., 454; 116 S. C., 47; 116 S. C., 1; 112 S. C., 519; 105 S. C., 401; 105 S. C., 60; 105 S. C., 1; 94 S. C., 88; 92 S. C., 501; 92 S. C., 113; 91 S. C., 476; 83 S. C.,

191. *Findings of fact by jury, sustained by trial Judge, not subject to review in chancery cases:* 122 S. C., 499; 110 S. C., 366; 106 S. C., 337; 82 S. C., 206. *Findings on issues of fact of a legal nature by trial Judge not reviewable on appeal, unless unsupported by evidence or based on error of law:* 126 S. C., 327; 125 S. C., 446; 124 S. C., 495; 124 S. C., 156; 120 S. C., 148; 115 S. C., 385; 114 S. C., 494; 114 S. C., 397; 113 S. C., 262; 113 S. C., 190; 112 S. C., 462; 112 S. C., 329; 112 S. C., 305; 112 S. C., 89; 111 S. C., 457; 111 S. C., 1; 110 S. C., 377; 110 S. C., 129; 110 S. C., 92; 110 S. C., 80; 107 S. C., 461; 107 S. C., 369; 107 S. C., 345; 107 S. C., 216; 107 S. C., 1; 91 S. C., 129; 73 S. C., 79; 70 S. C., 391; 69 S. C., 522; 23 S. C., 36; 22 S. C., 78; 5 S. C., 422; 5 S. C., 201; 4 S. C., 125. *Finding by trial Court on issues of fact in special and non-equitable proceedings not reviewable on appeal, unless unsupported by evidence or based on error of law; where jury trial waived and legal issues submitted to Court:* 111 S. C., 511; 95 S. C., 246; 93 S. C., 357; 90 S. C., 319; 90 S. C., 186; 79 S. C., 555; 73 S. C., 457; 72 S. C., 270; 51 S. C., 560; 45 S. C., 107; 37 S. C., 359; 15 S. C., 80. *Same; special proceedings:* 26 S. C., 298. *Same; habeas corpus proceedings:* 116 S. C., 212; 76 S. C., 152; 75 S. C., 217; 19 S. C., 604. *Same; attachment proceedings:* 43 S. C., 338. *Same; proceedings to set off homestead:* 125 S. C., 446. *Same; findings of fact in appeals from magistrate's Courts:* 126 S. C., 327; 118 S. C., 228; 112 S. C., 390; 112 S. C., 114; 110 S. C., 307; 107 S. C., 504; 106 S. C., 340; 91 S. C., 427; 93 S. C., 272; 93 S. C., 80. *Same; findings of fact in appeals from decisions of County Boards:* 40 S. C., 276. *Same; findings of fact in appeals from Probate Courts:* 112 S. C., 305; 73 S. C., 79. *Same; trial of will or no will:* 74 S. C., 191; 16 S. C., 40; 33 S. C. Eq., 196. *Same; proceedings for enforcement of mechanic's liens:* 125 S. C., 32; 123 S. C., 56; 83 S. C., 396. *Suit to enforce mechanic's liens; governed by equitable principles in some*

*jurisdictions:* 191 F., 1004; 111 C. C. A., 668; 185 F., 752; 108 C. C. A., 90; 184 F., 199; 107 C. C. A., 93; 94 So., 72; 25 Idaho, 355; 137 P., 529; 8 Cal. App., 505; 97 P., 216; 51 Colo., 314; Ann. Cas. 1913-B, 282; 173 Ind., 535; 91 N. E., 7; 140 N. Y. S., 429; 79 Misc. Rep., 357; 105 N. Y. S., 950; 54 Misc. Rep., 291; 63 W. Va., 660; 15 L. R. A. (N. S.), 1159; 151 Wis., 1; 138 N. W., 1021. *Same; governed by legal principles in some jurisdictions:* 57 Fla., 158; 49 So., 1019; 81 N. J. Eq., 486; 87 A., 114; 129 N. W., 1025; 32 L. R. A. (N. S.), 1072. *Same; deemed statutory proceeding governed by equity procedure in some jurisdictions:* 148 Ill. App., 536; 130 N. E., 62. *Right to enforce statutory lien unknown to common law de-pendent on statute:* 40 W. Va., 698; 31 S. E., 769. *Nature and incidents of proceeding to enforce mechanic's lien in this State:* 125 S. C., 32; 123 S. C., 58; 83 S. C., 396; 65 S. E., 394; 67 S. C., 17; 30 S. C., 267; 20 S. C., 502; 17 S. C., 156; 15 S. C., 552. *Finding of fact by trial Court in proceeding for enforcement of mechanic's lien not reviewable on appeal in this State unless unsupported by evidence or based on error of law:* 125 S. C., 32; 107 S. C., 369; 92 S. E., 1029; 91 S. C., 129; 74 S. E., 378; 90 S. C., 319; 73 S. E., 354.

April 5, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

The plaintiff appellant entered into a verbal contract to build a house for J. W. A. Sanders, one of the defendants, who is of the respondents and appellants.

The plaintiff appellant claimed on the one hand that he was to purchase the material and supervise the building and construction, as the agent of Sanders, under the direction and control of Sanders, for which he was to receive as compensation $500.00 if the dwelling did not cost over $7,500, and, if the cost was more than that sum, then he was to re-

ceive 10 per cent. on the cost above that sum as extra compensation; and his contention is that he was also to build a drug store and garage for Sanders.

Lumber, building materials, and house supplies were furnished by the codefendants of Sanders, and they, as well as Raines, claimed mechanics' liens, and Raines commenced his petition for the foreclosure of a mechanic's lien on the premises of Sanders, making his codefendants parties, and certain issues were raised between the parties.

The case was referred to B. B. Clark, Esq., as Master, who found sums in favor of Raines and in favor of the codefendants of Sanders, and found that the mortgage lien claimed by William Lee Sanders, one of the defendants, was second in priority to the mechanics' liens, and found that the amount due on this mortgage was $5,000.00, with attorney's fees.

On appeal from the Master's report, his Honor, Judge Townsend, upon hearing the exceptions, greatly modified the report, and, since his Honor has so fully stated the case in his decree, it will be unnecessary to make any further statement in relation to the facts of the case. His decree will be reported.

Numerous exceptions have been filed to this decree, and the matter has been thoroughly argued before the Court. The attorneys for Sanders, although they contend that the matter is concluded in the manner next hereinafter referred to, have argued the case at great length and in all of its aspects, and have, in their argument, taken the position that this is a law case, and the findings of the Circuit Court on issues of fact are not reviewable by this Court, unless such findings are wholly unsupported by the evidence, or influenced or controlled by an erroneous conception or application of the law, citing a great many cases from *Kirkland v. Cureton,* 4 S. C. (4 Rich.), 126, down to the time of *Huggins v. Atlantic R. Co.,* 119 S. E., 908; 126 S. C., 327.

That a proceeding of this kind is a law case is no longer an open question. *Metz v. Critcher,* 65 S. E., 394; 83 S. C., 396. *Willard v. Finch,* 116 S. E., 96; 123 S. C., 56; Id., 117 S. E., 818; 125 S. C., 32.

There are sharply contested issues of fact in this case, and the settlement of those issues by his Honor, the Circuit Judge, are final and binding on this Court; and, no errors of law having been committed by him, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.