16871

STEPHENSON FINANCE CO. v. BURGESS *ET AL.*

(82 S. E. (2d) 512)

348

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Respondent,*

May 18, 1954.

BAKER, Chief Justice.

In October of 1952, the respondent J. C. Burgess, brought an action for damages against one 1950 Ford automobile, alleging the negligent operation of the motor vehicle. The Ford was attached in the action and taken into custody by the Sheriff of Greenville County, also a respondent herein. In January of 1953, Robert Smith, the owner of the Ford, filed an undertaking for release of the car in the amount of $1,500.00, which bond was signed by himself and two sureties. The undertaking was approved by the Clerk of Court and the automobile released to the custody of the owner. Subsequently, the case was tried in the Greenville County Court, resulting in judgment for the plaintiff in the amount of $722.37, as is evidenced by the judgment roll in the office of the Clerk of Court filed June 4th, 1953.

On or about the same date, the respondent J. C. Burgess, through his attorneys, caused to be issued an execution against the Ford automobile and the Sheriff levied thereon, seized and prepared to sell the vehicle. Appellant, Stephenson Finance Company, claims an interest in the Ford automobile through assignment of a mortgage executed on or about June 25th, 1952, by the owner of the Ford to Augusta Road Sales, there being due thereon on or about July 1st, 1953, $695.42.

On July 1st, 1953, appellant obtained a temporary restraining order and rule to show cause, wherein respondents were restrained from selling or attempting to sell the Ford automobile, and the rule directed the respondents to show cause why they should not be permanently enjoined from

selling or attempting to sell the automobile pursuant to the execution previously issued in connection with the judgment obtained by the respondent Burgess.

Appellant alleged in its petition or complaint that it has a substantial interest by way of conditional sales contract or mortgage, in the automobile, and its rights will be defeated and extinguished if the Sheriff of Greenville County proceeds to sell the car pursuant to the execution and apply the proceeds of the sale to the judgment of the respondent J. C. Burgess.

Appellant further alleges in its pleadings that the Ford automobile was released and discharged from the attachment proceeding by virtue of the bond and undertaking in discharge of attachment filed by its owner and two sureties, whereby the respondent Burgess no longer has any claim or recourse against the Ford automobile, but must look to the satisfaction of his judgment out of the bond as filed in the office of the Clerk of Court for Greenville County.

The return of respondent simply asserts that his judgment constitutes a first lien on the Ford and he is entitled to have the automobile sold by the Sheriff and the proceeds of the sale applied to the payment of the judgment.

Honorable W. B. McGowan, Judge of the Greenville County Court, after hearing the rule to show cause, sustained the position of the respondent J. C. Burgess in a well considered order filed shortly after the hearing on the rule.

It is stipulated that the owner of the Ford automobile and his sureties are now insolvent, but the sureties were good and sufficient at the time of the approval of the bond by the Clerk of Court.

Appellant readily admits that the lien which respondent had against the Ford automobile would have taken precedence over its mortgage had the undertaking in release of attachment not been executed, but it contends the respondent lost his lien when the bond was filed to release the motor vehicle.

The question for determination, by way of appropriate exceptions, is whether respondent is entitled to satisfaction of the judgment from the proceeds of the sale of the Ford or must look only to those who executed the bond. Or, stated offending motor vehicle released or discharged by the filing of an undertaking whereby the bond itself is held as a substitute for the res.

Section 45-551, 1952 Code of Laws, gives to any person who is injured or damaged a lien for his damages against a motor vehicle operated in violation of law, or negligently, carelessly, willfully or wantonly. The lienor, under this section, "may attach such motor vehicle in the manner provided by law for attachments in this State."

Although the remedy of attachment is provided, the statutory lien is not dependent upon the attachment of the vehicle, but "under the statute, a lien on the offending vehicle came into existence and attached to the vehicle at the moment the injury was inflicted." *Waldrop v. M. & J. Finance Corporation,* 178 S. C. 527, 183 S. E. 460, 461.

Should an injured person desire to employ the remedy of attachment, he follows the procedure as provided in Sections 10-901 to 938, 1952 Code of Laws, not to create a lien, for he already has one, but for a more practical method of enforcing his lien by conserving the motor vehicle for eventual foreclosure of the lien when his independent action for damages may have successfully proceeded to judgment, unless the owner of the vehicle, or some other interested person, procures its release by giving security in the manner provided by law.

There is a vital distinction between liens created by statute and liens created by attachment. Illustrative of a lien created by attachment and filing of bond by a defendant, is the case of *Bates, Reed & Cooley v. Killian & Bros.,* 17 S. C. 553, an excerpt from which is quoted.

"* * *, section 265 of the code *supra* provides for the release of the property attached, where the attachment has been legally issued and there is no objection as to its regularity or want of observance of proper form, the effect of which provision, when adopted by the defendant, is to convert the action from one *in rem* to one *in personam,* with security by the defendant for the payment of the debt. This is done by permitting the defendant to give bond for the payment of the debt in the event that the plaintiff's action succeeds, *the purpose of an attachment being to obtain security for the debt by securing a lien on property. The bond provided for is substituted in the place of this lien, and the property is released.*" (Emphasis added.)

In those instances where a lien is not already in existence, it will be noted from the foregoing case that it is the purpose of an attachment to obtain security for a debt by securing a lien on property. When the lien is created by statute, the office of the attachment is not necessary to create the lien but merely to seize property and place it in the custody of law or court. When a bond is filed for the release of property upon which there is a lien originating by attachment, then the bond is substituted in the place of the lien for the attachment was the origin of the lien. The filing of a bond or undertaking to release an automobile attached for its negligent operation is merely to release the offending vehicle from the custody of law, for that is the only thing that has been accomplished by the attachment procedure. As is stated in *Richbourg v. Ragin,* 140 S. C. 250, 138 S. E. 801, Section 45-551, *supra,* creates a new cause in attachment and the only connection between that section and the sections of the Code relating to attachment is that the same method be followed as is prescribed. But the disjunctive requirements under the general attachment provisions of the Code as to the status of acts of a defendant have no application to attachment made under Section 45-551, *supra.* Since a lien was not created by the attachment proceeding and the bond is filed only to release the vehicle

from that accomplished by the attachment, it necessarily follows all that is accomplished is the release of the vehicle from the custody of law or court.

Appropriate at this point is a portion of Judge McGowan's order, to wit: "Thus, the right of J. C. Burgess to proceed against the Ford automobile because of the lien which he had was entirely independent of the attachment proceedings. It would be an anomalous conclusion indeed to hold that had J. C. Burgess not attached the Ford automobile, but obtained a verdict against the driver thereof, he would have a lien against the automobile, but by proceeding in the manner specifically authorized by statute and attaching the offending automobile, he thereby stood to risk and did lose the lien created by statute. Such a conclusion should be reached only when clearly contemplated by the statute and authorities."

An analogy may be drawn between a lien of this nature and that of a laborer, a mechanic, subcontractor or materialman, which are also statutory liens. It is specifically provided in connection with such liens, in Section 45-261 of the 1952 Code of Laws, that upon the filing of an undertaking, the lien shall be discharged, but the undertaking has to be a pledge of United States or the State of South Carolina securities, cash, or by a surety bond executed by a surety company licensed to do business in this State. It then becomes quite clear that it was not intended to release property from a statutory lien by the filing of an undertaking unless expressly permitted by statute, and in the form of an undertaking in which there is very little chance of insolvency.

Judge McGowan in his order also held that the equities of the case require a holding in favor of the respondents. In view of the foregoing, it is not necessary to consider the equitable portion of Judge McGowan's order.

The conclusion of the lower Court sustaining the right of the respondent Burgess to proceed with the execution,

levy and sale of the Ford automobile in satisfaction of his judgment is sustained, and exceptions of appellant dismissed.

STUKES, TAYLOR and OXNER, JJ., and J. ROBERT MARTIN, JR., Acting Associate Justice, concur.