17192

LOWNDES HILL REALTY COMPANY, Respondent, v. GREEN-VILLE CONCRETE COMPANY, Appellant, and BUILDERS LUMBER CO., INC., *ET AL.*, Respondents

(93 S. E. (2d) 855)

620

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Appellant,*

*Messrs. J. A. Henry* and *W. W. Wilkins* and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for certain Respondents,*

*Messrs. Cain, Earle & Boseman* and *Julius B. Aiken,* of Greenville, *for certain Respondents,*

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Appellant, in Reply.*

July 24, 1956.

LEGGE, Justice.

On April 20, 1953, Lowndes Hill Realty Company, owner of a lot near the City of Greenville, S. C., entered into a contract with Builders Lumber Company for the construction by the latter of a building thereon for an agreed price of $39,850.00. Prior to the award of the contract, one Paul Aughtry had negotiated a lease of the proposed building (which was to be known as the Aughtry Building) for a term of ten years at an annual rent of ten per cent of its cost. Lowndes Hill Realty Company employed one H. L. McLendon, an architect, to draw the plans for the building and supervise its construction.

The contractor entered upon the performance of his contract; and during construction the owner made to it certain payments which, taking into consideration adjustments between them for extras and for alleged failure of the contractor to comply with the plans and specifications, left a balance due under the contract by the owner to the contractor of $3,503.36, payment of which was withheld by reason of the notices of liens hereinafter referred to. The building had been completed on or about August 15, 1953.

Greenville Concrete Company, to which was owing a balance of $2,800.46 for materials furnished by it to the contractor on and between May 11 and August 12, 1953, and actually used in the erection of the building, filed in the Office of the Register of Mesne Conveyance for Greenville County on October 9, 1953, an itemized and verified statement or Certificate of Mechanic's Lien, to which we shall later refer, and on the same day served the said certificate upon Lowndes Hill Realty Company.

On January 26, 1954, Greenville Concrete Company filed in the office of the Clerk of Court a summons and petition seeking foreclosure of its mechanic's lien before mentioned; and said summons and petition were served upon Lowndes Hill Realty Company on January 28, 1954.

On January 28, 1954, Lowndes Hill Realty Company instituted the present suit, alleging, *inter alia:*

(a) That since the completion of the building, purported mechanics' liens had been filed against the said building and the lot on which it was built, as follows:

1. By Greenville Concrete Company, on October 9, 1953, for $2,800.46.

2. By R.. L. Waldrop, doing business as Waldrop Plumbing Company, on October 20, 1953, for $1,472.02;

3. By Robert Earl Anders, on October 29, 1953, for $614.47; and

4. By Thompson & Son Roofing and Heating Company, on November 18, 1953, for $2,455.45.

(b) That the attempted lien filed by Thompson & Son Roofing and Heating Company was void because served and filed more than 90 days after the lienor had last performed labor and furnished material in the erection of the building.

(c) That the purported liens filed by Greenville Concrete Company, Waldrop Plumbing Company and Robert Earl Anders were void because of failure on the part of the said lienors to give to the plaintiff, as owner of said premises, timely written notice of their respective claims.

(d) That the plaintiff had also received notices of the following claims against the contractor.

1. Vermiculite Placing Company, $6,095.00;

2. Greenville Glass & Mirror Company, $159.40;

3. Louisville Cement Company, $526.50;

4. Dixie Asphalt Products Corporation, $2,871.52; and

5. Delph Hardware & Speciality Company, $1,934.89.

(e) That the plaintiff, although not directly notified by the claimants, had also been informed of the following claims against the contractor:

1. Binswanger Glass Company, $1,384.01;

2. Virginia Steel Company, $2,121.23.

(f) That the plaintiff was without information as to whether any other debts were due by the contractor on account of the construction of said building, or as to whether the claims before mentioned included charges for labor or materials furnished the contractor not in connection with the construction of said building.

(g) That the plaintiff had made no disbursement to the contractor since receipt of said notices of claims; and that since the balance due by it under its contract for the construction of the building, $3,503.36, represented the extent of its liability to the contractor's creditors for labor and material furnished in the erection of the building, it tendered that amount into court for such distribution as the court might determine.

Thompson & Son Roofing and Heating Company had, prior to the institution of the present suit, commenced an action for the foreclosure of its alleged mechanic's lien; but on January 22, 1954, it amended its complaint so as to allege a constructive trust in its favor in respect of the balance of the contract price in the hands of Lowndes Hill Realty Company.

After the commencement of the present suit Builders Lumber Company, the contractor, went into receivership; and John A. Henry, Esq., its receiver, intervened and was made a party defendant herein.

The actions brought by Greenville Concrete Company and Thompson & Son Roofing and Heating Company were, by consent, consolidated with the present one. Greenville Concrete Company answered the complaint herein, setting up its claim to a mechanic's lien and praying its foreclosure in this action or, in the alternative, payment of the amount due it from the funds deposited with the court. The answers of the other defendants denied that Greenville Concrete Company had obtained a lien on the property or was entitled to priority of payment from the said funds.

The Master, to whom the cause had been referred by consent, found and held, *inter alia:*

1. That Greenville Concrete Company had no mechanic's lien, and was therefore not entitled to priority in the distribution of the fund, because:

(a) The materials furnished by it and used in the erection of the building had not been so furnished "by virtue of an agreement with, or by consent of, the owner of such building * * * or any person having authority from, or rightfully acting for, such owner in procuring * * * such * * * materials", Code 1952, Section 45-251; and

(b) It had not complied with the requirement of Section 45-254 relative to service upon the owner of notice of the furnishing of such mtaerials.

2. That after the building had been completed, but within ninety days after they had, respectively, last furnished materials, the following materialmen had filed certificates of liens in the R. M. C. Office for Greenville County:

(a) Greenville Concrete Company

(b) Waldrop Plumbing Company

(c) Robert Earl Anders

(d) Thompson & Son Roofing and Heating Company

3. That of the lien claimants just mentioned only Greenville Concrete Company and Thompson & Son Roofing and Heating Company had instituted actions to foreclose their purported liens; and the latter had subsequently amended its complaint as hereinbefore stated.

4. That neither Waldrop Plumbing Company nor Anders contend that they have any lien against the property.

5. That "the only basis of a lien claim by Waldrop was disposed of by settlement reached during the hearings, and the balance of his claim occupies a position similar to the other creditors who furnished materials going into the construction of the building".

6. That the funds in court, after certain costs and disbursements, should be paid over to the Receiver of Build-

ers Lumber Company who should distribute the same pro rata among all of the creditors of Builders Lumber Company who had furnished labor and materials used in the construction of the building, as follows:

    (a)  Greenville Concrete Company .........$2,800.46
    (b)  Waldrop Plumbing Company ........ 1,178.00*
    (c)  Robert Earl Anders ................ 614.47
    (d)  Thompson & Son Roofing and Heating Co. ......................... 2,430.45*
    (e)  Vermiculite Placing Co. ............ 6,095.00
    (f)  Greenville Glass & Mirror Co. ........ 159.40
    (g)  Louisville Cement Co. .............. 526.50
    (h)  Dixie Asphalt Products Corp. ........ 2,871.52
    (i)  Delph Hardware & Specialty Co. ...... 1,934.89
    (j)  Binswanger Glass Co. ............. 1,384.01
    (k)  Virginia Steel Co. ................. 2,121.23

* Amount of original claim reduced in course of proceedings before Master.

Exceptions to the Master's Report having been filed by Greenville Concrete Company, John A. Henry, Receiver, Dixie Asphalt Products Corporation and Louisville Cement Company, the matter thereafter came on to be heard before the Honorable Bruce Littlejohn, Presiding Judge, who by his decree dated May 12, 1955, overruled all exceptions and affirmed the report. From this decree only Greenville Concrete Company has appealed. Its exceptions present for solution the following questions:

1. Did appellant acquire a mechanic's lien under Sections 45-252 and 45-254 of the 1952 Code?

2. Did appellant acquire a mechanic's lien under Section 45-251?

3. If either 1 or 2 is answered affirmatively, what are appellant's rights in respect of the money paid into court by the owner of the property?

Sections 45-252 and 45-254 read as follows:

"45-252. Every laborer, mechanic, subcontractor or person furnishing material for the improvement of real estate

when such improvement has been authorized by the owner shall have a lien thereon, subject to existing liens of which he has actual or constructive notice, to the value of the labor or material so furnished. Such lien may be enforced as herein provided.

\* \* \* \* \*

"45-254. Whenever work is done or material is furnished for the improvement of real estate upon the employment of a contractor or some other person than the owner and such laborer, mechanic, contractor or materialman shall in writing notify the owner of the furnishing of such labor or material and the amount or value thereof, the lien given by § 45-252 shall attach upon the real estate improved as against the true owner for the amount of the work done or material furnished. But in no event shall the aggregate amount of liens set up hereby exceed the amount due by the owner on the contract price of the improvement made."

Section 45-259 provides that "such a lien shall be dissolved unless the person desiring to avail himself thereof, within ninety days after he ceases to labor on or furnish labor or materials for such building or structure, serves upon the owner \* \* \* and files in the office of the register of mesne conveyances \* \* \* a statement of a just and true account of the amount due him \* \* \* together with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner of the property, if known, which certificate shall be subscribed and sworn to by the person claiming the lien or by someone in his behalf and shall be recorded in a book kept for the purpose by the register \* \* \*."

It appears without dispute that on October 9, 1953, appellant filed in the office of the register of mesne conveyances the required statement or certificate of lien, and served a copy thereof upon Lowndes Hill Realty Company on the same day. Both the Master and the Circuit Judge held that such service did not comply with the requirement of Sec-

tion 45-254 as to notice to the owner, for the reason that Section 45-259 relates only to the dissolution of the lien obtained under Section 45-254, to which lien the notice under Section 45-254 is a condition precedent, and consequently, since the notice required by Section 45-254 had not been given prior to the recording and service of the certificate, no lien had ever been obtained. Such holding was, in our opinion, erroneous.

The manifest two-fold purpose of Sections 45-252 and 45-254 is:

(1) The protection of one, not a party to a contract with the owner, who furnishes labor or material in the improvement of the owner's property, by giving him a lien for such labor or material; and (2) the protection of the property owner by limiting his liability and that of his property in respect of all such liens to "the amount due by the owner on the contract price of the improvement made". *Snipes v. Horton,* 129 S. C. 1, 123 S. E. 321.

The materialman's lien, or rather his right to a lien, arises, inchoate, when the material is furnished, Section 45-252, *Williamson v. Hotel Melrose,* 110 S. C. 1, 96 S. E. 407; but in order to perfect and enforce it he must: (1) give notice to the owner "of the furnishing of such * * * material and the amount or value thereof", Section 45-254; (2) serve and record a certificate of lien within ninety days after he ceases to furnish material, Section 45-259; and (3) bring suit to foreclose the lien within six months after he ceases to furnish material, Section 45-262.

Section 45-254 specifies no time at which or within which notice of the furnishing of material is to be given to the owner. Such notice may be given at any time. *Cf. Hughes v. Peel,* 221 S. C. 307, 70 S. E. (2d) 353; but of course it will be ineffectual if the other requisites to the perfection and enforcement of the lien, Sections 45-259 and 45-262, are not met. Delay in giving the notice

cannot operate to the detriment of the owner, because his liability under the lien is limited to the balance due by him to the prime contractor at the time he receives the notice.

That the property owner should be twice notified, Sections 45-254 and 45-259, of the amount or value of the material furnished would appear to be needless duplication and certainly not essential to the accomplishment of the purposes of the statute. Explanation of the existence of this duplicate requirement is to be found not in logic or reason, but in the legislative history of the statute, which we shall as briefly as possible review.

The Act of December 19, 1816, VI Stat. at L. 32, provided a lien in favor of "every master mechanic, handicraftsman and artificer" upon any building erected, improved or repaired by him, for the amount justly due him therefor, the lien: (1) not to take effect until there had been recorded an "agreement in writing, in nature of a contract", executed "by the parties to such contract and the proprietor of the premises"; and (2) to remain of force for not more than three years.

The Act of March 16, 1869, XIV Stat. at L. 220, provided, in Section 1, that "any person to whom a debt is due for labor performed or furnished, or for materials furnished, and actually used in the erection, alteration or repair of any building or structure upon any real estate, by virtue of an agreement with, or by consent of, the owner of such building or structure, or any person having authority from, or rightfully acting for, such owner, in procuring or furnishing such labor or materials, shall have a lien upon such building or structure and upon the interest of the owner thereof in the lot of land upon which the same is situated, to secure the payment of the debt so due to him, and the costs which may arise in enforcing such lien under this Act, except as is provided in the following sections".

This section, without substantial change other than the extension of the lien to include debts due for labor so per-

formed and materials so furnished in the boring and equipping of wells, is now Section 45-251 of the 1952 Code.

Section 2 of the Act of 1869 reads as follows:

"Such lien for materials furnished shall not attach unless the person furnishing the same, *before so doing,* gives notice to the owner of the property to be affected by the lien, if such owner is not the purchaser, that he intends to claim such lien". (Italics ours.) (This Section, without change, became Section 2351 of the General Statutes of 1882, and thereafter Section 2466 of the Revised Statutes of 1893.)

Section 5 of the Act of 1869 provided that the lien should be dissolved unless the person desiring to avail himself of it should, within thirty days after ceasing to furnish labor or materials, file in the clerk's office a statement or certificate of the amount due, together with a description of the property intended to be covered by the lien, sufficiently accurate for identification, with the name of the property owner, if known.

Section 7 provided that the lien should be dissolved unless suit to enforce it were brought within ninety days after the last furnishing of labor or materials.

Sections 5 and 7 of the Act of 1869 were amended by the Act of February 20, 1873, XV Stat. at L. 350, which changed the period for filing the certificate from thirty days to ninety days and the period for bringing suit from ninety days to six months. Section 5, as amended, which had become Section 2354 of the General Statutes of 1882, was further amended in 1884, XVIII Stat. at L. 822, so as to require the certificate to be filed in the office of the register of mesne conveyance; and later, as Section 8735 of the 1942 Code, was further amended by the Act of May 27, 1950, XLVI Stat. at L. 2294, so as to require the certificate to be served upon the property owner as well as filed in the office of the register of mesne conveyance or clerk of court. With these amendments, Section 5 of the Act of 1869 is now Section 45-259, and Section 7 is Section 45-262, of the 1952 Code.

It will be noted that these early statutes related only to liens in favor of persons furnishing labor and materials under agreement with, or by consent of, the property owner or his agent. It was declared in *Murray v. Earle,* 1880, 13 S. C. 87, though the statement was not necessary to the decision, that it was doubtful whether under the statute as it then stood that "a mere subcontractor" could acquire a lien. In *Gray v. Walker,* 1881, 16 S. C. 143, it was held that a plasterer furnishing or performing labor in the erection of a building, pursuant to contract with the prime contractor, was not within the protection of the statute, in the absence of proof that he performed the work by virtue of an agreement with, or by the consent of, the property owner or his agent.

The benefit of the mechanics' lien statute was first extended to subcontractors and persons contracting with the prime contractor by the Act of February 25, 1896, XXII Stat. at L. 197, which repealed Section 2466 of the Revised Statutes of 1893 and instead provided that "any sub-contractor or person contracting with an original contractor may have such a lien: Provided, That *before performing or furnishing labor or furnishing materials, or both,* he do give notice in writing to the owner of the property to be affected thereby, * * * And provided, further, That the aggregate amount of any and all such liens * * * shall not exceed the amount of the lien of the original contractor * * *." (Italics ours.)

The Act of February 29, 1916, XXIX Stat. at L. 686, made no reference to any former statute. It purported to be not an amendatory act, but an original one, complete in itself. It contained six sections, as follows:

"Section 1. Every laborer, mechanic, sub-contractor or person furnishing material for the improvement of real estate where such improvement has been authorized by the owner shall have a lien thereon subject to existing liens of which he has actual or constructive notice to the value

of the labor or material so furnished which may be enforced as here-in-after provided."

It will be noted that this section has been incorporated, almost verbatim, in the 1952 Code as Section 45-252 before quoted. But the word "hereinafter" in Section 1 of the 1916 Act, expressly providing that the following sections of that Act should govern in regard to the enforcement of the lien, has been changed, in the course of codification, to "herein", thus referring to all of the Code provisions, Chapter 5 of Title 45, relating to mechanics' liens, including Section 45-259 before quoted, which, as Section 5 of the 1869 Act as amended, related to persons contracting with the property owner, and not to subcontractors, laborers and materialmen dealing with the prime contractor.

"§ 2. Whenever work is done or material is furnished for the improvement of real estate upon the employment of a contractor or some other person than the owner and such laborer or mechanic, contractor or materialman shall in writing notify the owner of the furnishing of such labor or material and the amount or value thereof then and in that event the lien given by the foregoing section shall attach upon the real estate improved as against the true owner for the amount of the work done or material furnished; Provided, That in no event shall the aggregate amount of liens set up hereby exceed the amount due by the owner on contract price of the improvement made". This section, substantially verbatim, is now Section 45-254 of the 1952 Code.

"§ 3. Any person claiming a lien under the provisions of this Act who shall have given the notice provided for herein shall be entitled to be paid in preference to the contractor at whose instance the labor was performed or material furnished and no payment by the owner to the contractor thereafter shall operate to lessen the amount recoverable by the person so giving the notice". This section is now Section 45-255 of the 1952 Code, the word "Act" having been changed to "chapter".

"§ 4. In the event the amount due the contractor by the owner shall be insufficient to pay all the lienees [leinors?] acquiring liens as above provided it shall be the duty of the owner to prorate among all just claims the amount due such contractor". This section is now Section 45-256 of the 1952 Code.

"§ 5. Any person acquiring a lien as above provided may foreclose the same in the manner now provided by law for foreclosing mechanics and material *mens liens*".

"§ 6. All acts or parts of Acts inconsistent with this Act are hereby repealed".

It is thus apparent that in the enactment of the Act of 1916 the General Assembly did not intend to impose upon subcontractors, laborers and materialmen dealing with the prime contractor and not with the owner any requirement for the perfection of their liens other than written notice to the owner "of the furnishing of such labor or material and the amount or value thereof". Such exemption from the requirements, imposed upon the prime contractor, of recording and serving within a limited time a statement or certificate of lien, and of bringing suit to foreclose within a limited time, would appear reasonable. In the first place, those requirements would in most cases be more onerous to laborers and materialmen than to the contractor. And secondly, since the security of such lien was limited to the balance due by the owner to the contractor at the time of such notice, it would reasonably follow that the notice would be promptly given to the owner, who could thereupon protect himself.

But in the 1922 and subsequent codifications of the general statutory law, the provisions of the 1869 Act, as amended, and the provisions of the 1916 Act have been thrown together in such fashion that the requirements imposed by the former in regard to recording and serving a certificate of lien and in regard to the time limit for bringing suit are now applicable to subcontractors, laborers and ma-

terialmen as well as to the prime contractor. Whether or not such result was contemplated by the legislature is beside the point. There being no ambiguity apparent in the 1952 Code provisions to which we have referred, we cannot resort to the original enactments as a guide to construction. *Town of Forest Acres v. Seigler,* 224 S. C. 166, 77 S. E. (2d) 900; *State v. Conally,* 227 S. C. 507, 88 S. E. (2d) 591. Our review of the history of the legislation has been, as before stated, for the purpose of showing how it has come about that the Code provisions require both: (1) that notice of the furnishing of materials be given to the owner; and (2) that a certificate of lien be recorded and served upon him. Compare *Morganton Mfg. & Trading Co. v. Anderson,* 165 N. C. 285, 81 S. E. 418, where, in a somewhat similar situation, a substantially different codification enabled the court to hold that the filing of a notice of lien with the clerk of court was not required of subcontractors, laborers or materialmen.

There is, as we have said, no requirement that the "notice" under Section 45-254 be given at any particular time; nor does the statute prescribe the form of the notice, other than that it shall be in writing and shall apprise the property owner "of the furnishing of such labor or material and the amount or value thereof". It follows that if the certificate of lien contains this information, service of the certificate upon the property owner will comply with the requirement of "notice".

In the case at bar, the certificate of Mechanic's Lien as served upon Lowndes Hill Realty Company contained the following statements:

1. "That Greenville Concrete Company has a claim against Lowndes Hill Realty Company amounting to the sum of two thousand eight hundred and 46/100 dollars due to said Greenville Concrete Company at the date of this certificate, an itemized statement of said indebtedness being hereunto attached. * * *"

2. "That the said claim is made for and on account of the said furnishing of labor and materials which were actually used for ·construction of a building for the said Lowndes Hill Realty Company, which said buildings and structures are situated on a tract of land owned by and in possession of the said Lowndes Hill Realty Company in Greenville County, South Carolina" (Here follows a description of the tract).

3. "Notice is hereby given that said Greenville Concrete Company has and claims a lien on the said buildings and the tract of land above described * * * to secure the payment of the debt above mentioned, pursuant to the'provisions of the statutes in such case made and provided".

Service of this certificate was sufficient compliance with the requirement of Section 45-254 in regard to notice. Nor was its effectiveness vitiated by the fact that in addition to its contents quoted above it contained a statement to the effect that the material had been furnished pursuant to a contract between the owner and the claimant, for this, though erroneous, was mere surplusage.

Having thus concluded that appellant had, by recording and serving the certificate within ninety days after it ceased to furnish materials, complied with the requirements for the perfection of its lien under Sections 45-252 and 45-254, it becomes unnecessary for us to consider whether it acquired a lien under Section 45-251.

There remains for consideration the question of appellant's rights in the fund of $3,503.36 which, pending this appeal, was paid by Lowndes Hill Realty Company to the clerk of the court below, and which has since, pursuant to a consent order, been paid over ·by the clerk to J. A. Henry, Esq., as Receiver of Builders Lumber Company "without prejudice to the question of the right of appellant or any of the respondents to. a mechanic's lien and consequent right of priority to the fund".

We are unable to agree with appellant's contention that since he was the first to perfect his lien he should be entitled to priority over the other materialmen who later perfected theirs. No such priority is expressly given by any of the applicable Code provisions; on the contrary, since their prime purpose appears to be the protection of all subcontractors, laborers and materialmen who have complied with the requirements of Sections 45-254 and 45-259 before mentioned, it would seem to follow that among them there should be no priority. Such is at least inferable from Section 45-256, providing that:

"In the event the amount due the contractor by the owner shall be insufficient to pay all the lienees [sic] acquiring liens as herein provided it shall be the duty of the owner to prorate among all just claims the amount due such contractor".

The "just claims" referred to in Section 45-256 mean the just claims of all lienors "acquiring liens as herein provided".

Certain respondents argue that all materialmen who have given written notice of their claims to the property owner are entitled to share ratably in the fund; and in support of this contention they cite *Charlotte Pipe and Foundry Company v. Southern Aluminum Company,* 172 N. C. 704, 90 S. E. 923. But that case is not in point here, for under the North Carolina statute, as under our Act of February 29, 1916, *supra,* the only requisite for the perfection of a materialman's lien was that he give notice to the owner of the furnishing of the materials. Since the codification of our 1916 Act, as we have seen, the materialman in order to perfect his lien must also record and serve a certificate of lien within ninety days after he ceases to furnish materials.

We note in passing that Section 45-255 of our 1952 Code, which was originally Section 3 of the Act of February 29, 1916, *supra,* provides that "any person claiming a lien un-

der the provisions of this chapter *who shall have given the notice provided for herein* shall be entitled to be paid in preference to the contractor * * * and no payment by the owner to the contractor thereafter shall operate to lessen the amount recoverable by the person so giving the notice". In view of the plain requirement · of Section 45-259 that a certificate of lien be also recorded and served within the ninety-day period, payment by owner to contractor after receipt of notice from a materialman who did not thereafter perfect his lien as required by 45-259 might give rise to interesting questions under 45-255; but happily they do not arise in the instant case, because no such payments were made.

Both the Master and the Circuit Judge held that all creditors of Builders Lumber Company who furnished labor and materials actually used in the construction of the building are entitled to share pro rata in the distribution of the balance due under the contract, because of Section 45-301, which provides that:

"Any contractor in the erection, alteration or repairing of buildings in this State shall pay all laborers, subcontractors and material men for their lawful services and material furnished out of the money received for the erection, alteration or repairs of buildings upon which such laborers, subcontractors and material men are employed or interested and such laborers, as well as all subcontractors and persons who shall furnish material for any such building, shall have a first lien on the money received by such contractor for the erection, alteration or repair of such building in proportion to the amount of their respective claims".

With this holding we do not agree. Section 45-301 and the two sections following it (45-302, making it a misdemeanor for a contractor to fail to pay laborers, subcontractors and materialmen, and 45-303 giving the contractor the right to arbitrate with them "by agreement") form a chapter of the Code separate and distinct from that devoted to mechanics' liens. They are concerned with the

rights of subcontractors, laborers and materialmen not against the building or its owner or in the balance of the contract price in the hands of the owner, but in the money that has been paid by the property owner to the prime contractor. *Morgan & Austin v. D. W. Alderman & Sons Co.,* 70 S. C. 462, 50 S. E. 26.

At the commencement of the instant case the materialmen who had in writing notified the owner of the furnishing of such materials, Section 45-254, and had within the time limited by Section 45-259 recorded and served the certificate of lien therein prescribed, and against whom the six-months statute of limitation upon the commencement of suit to foreclose, Section 45-262, had not run, had perfected their liens against the property and were entitled to enforce them to the extent, in the aggregate, of the balance due by the owner to the contractor. (Those who had not given notice to the owner, or who, having given notice, had failed to record and serve the required certificate of lien, either had never acquired liens or had lost them, because it is undisputed that the building had been completed more than ninety days prior to the commencement of this action). Their rights against the owner, to the extent of the unpaid balance of the contract price remaining in his hands, were not affected by the owner's tender of this money into court, or by his subsequent payment of it to the clerk. Nor were they affected by the payment of it, "without prejudice", by the clerk to the Receiver of the contractor; for if the Receiver be considered as "standing in the stead" of the contractor, as the court below held, these lien creditors were entitled, under the express terms of Section 45-255, "to be paid in preference to the contractor". Such payments in the course of this action merely transferred from the property to the fund the claims of the materialmen who at the time of the commencement of the action had perfected their liens as aforesaid. It follows from what we have just said that the Receiver could have no claim upon the fund except to the extent that it might have exceeded the aggregate amount of the perfected liens.

The record here does not enable us to determine which of the lien claimants, other than Greenville Concrete Company, is or are entitled to share in the distribution of the fund. The Master in his report states that within ninety days after they had, respectively, last furnished materials for the construction, Waldrop Plumbing Company, Robert Earl Anders, and Thompson & Son Roofing and Heating Company filed certificates of lien in the R. M. C. Office. The date of the filing of the Thompson certificate is stated to be November 18, 1953, which would appear to have been more than ninety days after the furnishing of its material if such material were furnished prior to the completion of the building "on or about August 15, 1953".

Counsel for Lowndes Hill Realty Company admitted at the hearing before the Master that certificates of lien were served upon that company within the statutory period by Waldrop and Anders, but not by Thompson. In the Master's Report it is also stated that "the only basis of a lien claim by Waldrop was disposed of by settlement reached during the hearings, and the balance of his claim occupies a position similar to the other creditors who furnished materials going into the construction of the building."

The institution of this action by Lowndes Hill Realty Company relieved all of the lien claimants who were made parties defendant therein from the necessity of thereafter bringing suit to foreclose their liens. But as we have before indicated, if the six-months period in which such foreclosure suits were required under Section 45-262 to be brought had expired when the present action was commenced, the liens of such claimants were lost.

The judgment of the lower court is reversed, and the cause is remanded for further proceedings in conformity with the views herein expressed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.