17407

Andrew J. STEWART, Appellant, v. W. T. MARTIN, Frank MEL-
TON and Virgil .C. MOORE, d/b/a Chester Auto
Finance Company, Respondents

(102 S. E. (2d) ˙886)

484

*Messrs. Hemphill & Hemphill* and *Fred H. Strickland,* of Chester, *for Appellant,*

*Messrs. Hamilton & Hamilton* and *Charles W. McTeer,* of Chester, *for Respondents,*

April 2, 1958.

OXNER, Justice.

This is an appeal from an order sustaining defendant's demurrer to plaintiff's complaint, the allegations of which may be briefly summarized as follows:

On November 10, 1955, a Chevrolet automobile, registered in the name of one Floyd Galloway, collided with a taxicab owned and operated by plaintiff. The collision was caused by the negligence and recklessness of the driver of the Chevrolet. Shortly thereafter the plaintiff instituted an action to recover the damages resulting from said collision and in said action procured from the Clerk of Court a warrant of attachment against the Chevrolet car, which was turned over to the Sheriff of Chester County. Virgil C. Moore, doing business as Chester Auto Finance Company, held a mortgage on the automobile. For the fraudulent purpose of preventing the sheriff from attaching said Chevrolet, Moore, through his agents and servants W. T. Martin and Frank Melton, wilfully and maliciously took the car from Galloway, removed it from Chester County, secreted it, and refused to give any information to the Sheriff of Chester County as to its whereabouts, all of which was done to deprive the plaintiff of his right to have the offending automobile attached. As a result, the sheriff has been unable to seize said automobile under the attachment.

The instant action was instituted on December 9, 1955 to recover damages sustained on account of the alleged wrongful acts of the defendants in preventing the sheriff from seizing said automobile. Plaintiff alleged in his complaint that he "has been deprived of his rights, has been inconvenienced, has been unable to enforce his lien, has been embarrassed, has been illegally defrauded of his rights, and has been put to trouble and expense, all to his injury and damage in the sum of $15,000.00 damages, actual and punitive."

The demurrer was on the ground that the complaint did not state facts sufficient to constitute a cause of action in that it did not appear that there had been any adjudication that the alleged damage to plaintiff's taxicab was caused by the negligent operation of the Chevrolet, or any judicial determination that plaintiff had a lien thereon.

The Circuit Judge construed the complaint as an action for conversion and held that such a cause of action could not

be maintained until it was judicially determined by a court of competent jurisdiction that the plaintiff had a lien on said automobile.

At the outset it may be stated that we do not construe the complaint as an action for conversion, rather it is an action to recover damages resulting from the wrongful and malicious acts of the defendants in removing and secreting said Chevrolet automobile and thereby preventing the sheriff from seizing same under the attachment in his hands.

Most courts hold that a general creditor cannot maintain an action for damages against a third party for fraudulently enabling the debtor to dispose of his property to defeat plaintiff's claim. Some of these decisions are based upon the ground that any damages to the plaintiff are no different in nature from those to all other creditors, stating that if one creditor could recover, another could also, and such third party might be liable several times over. Other courts rest their decisions upon the ground that the damages are too remote and speculative. The courts of Pennsylvania take a different view. The authorities are collected in an annotation in 47 L. R. A. beginning on page 433. *Raymond v. Blancgrass,* 36 Mont. 449, 93 P. 648, 15 L. R. A., N. S., 976, contains an excellent discussion of the subject. We are now called upon to make a choice between these conflicting decisions, for nearly all the authorities agree that such an action may be maintained where the creditor has a lien upon, or a specific interest in, the property concealed or disposed of by such third party for the purpose of defeating plaintiff's claim.

In 86 C. J. S. Torts § 44, p. 969, our case of *Michalson v. All,* 43 S. C. 459, 21 S. E. 323, 49 Am. St. Rep. 857, is cited in support of the statement that "one who impedes or obstructs another's remedy for the enforcement of a fixed and ascertained right against a third person has been held responsible for the injury thus occasioned." In *Findlay v. McAllister,* 113 U. S. 104, 5 S. Ct. 401, 404, 28 L. Ed. 930, the Court said: "The right of a

judgment creditor to proceed by action against those who rescue the person of his debtor arrested on mesne or final process, or interfere with the goods of his debtor so as to prevent a levy or sale by the sheriff to satisfy his judgment, is well recognized at common law." All of this is in accordance with the general rule that, "A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interests of another is liable to the other for such harm if it results * * *." Restatement of the Law of Torts, Section 870.

Under the terms of Section 45-551 of the 1952 Code, where any person suffers personal injury or property damage as a result of the negligent operation of a motor vehicle, any damage recovered constitutes "a lien next in priority to the lien for State and county taxes upon such motor vehicle", and the person so damaged is given the right to attach the vehicle in the manner provided by law for attachments in this State. The precise nature of the lien mentioned is not entirely clear under our decisions. In *State v. Campbell,* 159 S. C. 128, 155 S. E. 750, 752, it was held that this statute "creates a lien only upon the condition" that injury or damage results from the negligent operation of the motor vehicle but when this is shown and the amount of damage fixed by a final judgment of the court, such lien "dates back to the moment of the injury and attaches to the offending vehicle from that time." Although the remedy of attachment is provided, the Court pointed out in *Waldrop v. M. & J. Finance Corporation,* 178 S. C. 527, 183 S. E. 460, that the statutory lien is not dependent upon the attachment of the vehicle and dates back to the moment injury was sustained. In *Stephenson Finance Co. v. Burgess,* 225 S. C. 347, 82 S. E. (2d) 512, 514, the Court said: "Should an injured person desire to employ the remedy of attachment, he follows the procedure as provided in Sections 10-901 to 938, 1952 Code of Laws, not to create a lien, for he already has one, but for a more practical method of enforcing his lien by conserving the motor vehicle for eventual foreclosure of the

lien when his independent action for damages may have successfully proceeded to judgment, unless the owner of the vehicle, or some other interested person, procures its release by giving security in the manner provided by law."

Whatever the precise nature of the lien may be, it is clear under these decisions that a person claiming to have been injured or damaged as a result of the negligent operation of a motor vehicle does not occupy the position of a mere general creditor. Assuming that a lien in the strict sense does not arise immediately when the damage is sustained, the injured person has a right, prior to all other creditors, to obtain payment of any judgment recovered through a sale of the offending vehicle. The lien may be inchoate or contingent until the injured person obtains final judgment but in the meantime he has a special interest in the property—a fixed and positive security for the payment of any judgment which may be awarded. The lien for the amount of any judgment obtained may be enforced against the car in the hands of an innocent purchaser for value. *Tate v. Brazier,* 115 S. C. 283, 105 S. E. 413.

It does not follow from the fact that ultimately the injured person may not recover or the person causing the damage may promptly pay any judgment obtained, that before final judgment the person claiming to have suffered damages by the negligent operation of a motor vehicle has no special interest in such automobile. Contingencies of the above nature also exist when a laborer, materialman or other person given a statutory lien institutes an action to enforce same. In *Lowndes Hill Realty Co. v. Greenville Concrete Co.,* 229 S. C. 619, 93 S. E. (2d) 855, 860, the Court said that, "The materialman's lien, or rather his right to a lien, arises, inchoate, when the material is furnished", but pointed out that in order to perfect and enforce the lien, the materialman must comply with certain requirements.

It is argued that until the plaintiff in this case obtains a final judgment in the action in which the attachment was issued, it cannot be determined whether he

has sustained any damages from the tortious acts of the defendants in preventing the attachment. But we do not think the recovery of a judgment in the other action is a prerequisite to bringing this action, which is entirely distinct from an action for damages against the offending car or its driver.

The record does not disclose whether the action ■ brought by plaintiff was *in rem* against the damage feasant car, or *in personam* against Galloway, or both against the car *in rem* and against Galloway *in personam*. He had a right to proceed in either of these three ways. *Raines v. Poston,* 208 S. C. 349, 38 S. E. (2d) 145. Suppose a case where the driver of the offending vehicle is unknown or for some other reason an injured person can only proceed *in rem* against the offending vehicle. In such a case, no action under defendants' view could ever be maintained against a person fraudulently removing and secreting the motor vehicle causing the damage, for in an *in rem* action it is essential that the *res* be brought within the jurisdiction of the court.

In conclusion, it may be stated that we are not called ■ upon to pass upon the measure of damages in an action of this kind. The allegations of the complaint, which must be considered as true in passing on the demurrer, show substantial damages.

The order sustaining the demurrer is reversed, with leave to defendants to answer the complaint within twenty days after the filing of the remittitur.

Stukes, C. J., and Taylor, Legge, and Moss, J.J, concur.