1733

STOUDENMIRE HEATING AND AIR CONDITIONING COMPANY, INC., Respondent v. CRAIG BUILDING PARTNERSHIP and the South Carolina National Bank, of whom Craig Building Partnership is, Appellant.

(417 S.E. (2d) 634)

Court of Appeals

*Herbert W. Hamilton, Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for appellant.*

*Joseph C. Coleman,* and *Charles D. Davis,* Columbia, *for respondent.*

Heard March 18, 1992.

Decided April 27, 1992.

CURETON, Judge:

This is an action to foreclose a mechanic's lien. The master found the subcontractor, Stoudenmire Heating and Air Conditioning Company, Inc., had a lien in the amount of $9,560 on the property of Craig Building Partnership. The master based his finding upon *S.C. Code Ann.* §§ 29-5-10 and 29-5-20 (Rev. 1991). We affirm in part, reverse in part, and remand.

## I.

Craig Building Partnership was the owner of an office building. Craig contracted with a general contractor, Pierpoint Inc., to perform renovations on the building. The contract price was $173,403. One of the three general partners of Craig Building Partnership was Robert A. Creed. He was also the president of Pierpoint.

Pierpoint Inc. entered into a verbal agreement on March 7, 1988, with Stoudenmire Heating and Air Conditioning for the heating and air conditioning work on the building. The agreed price for the initial phase of the work was $2,750.[1] Stoudenmire began work on the initial phase on March 8, and completed it on or about March 15, 1988. On March 15, Stoudenmire discovered the air conditioning equipment originally planned for use in the second phase of the job was not suitable. Stoudenmire notified Carmen David, the project man-

---

[1] Everette Stoudenmire testified that aside from the initial work of ducting existing equipment, there was "supposed to be [other] equipment on the job but at the time of my first inspection, I could not find it; so I did not quote a price for ducting that equipment out."

ager for Pierpoint, of the need for new equipment and the necessity for an additional sum of $6,810 to complete the job. Carmen David obtained permission from the owner for the additional work and communicated the approval to Stoudenmire on March 18, 1988. The work was completed on March 30 and Stoudenmire billed Pierpoint $9,560 for all work performed.

Pierpoint Inc. had financial difficulties during March of 1988. On or about March 16, Pierpoint became unable to pay its bills and Craig Building Partnership began paying bills directly for Pierpoint. After that date no further payments were made by Craig to Pierpoint. Individuals who had worked on the job for Pierpoint were kept on the job and paid directly by Craig. Stoudenmire was not aware of this situation. Stoudenmire was also not aware until after it performed its work that one of the general partners in Craig was the president of Pierpoint.

In mid-April of 1988 Everette Stoudenmire called A.L. Saad, managing partner of Craig Building Partnership, and told Saad his company had not been paid for its work. According to Stoudenmire, Saad said Pierpoint had not made a draw for the work and Saad would check to see if Craig could pay him directly. On April 22, 1988, Stoudenmire sent a letter to Pierpoint with a copy to Craig indicating the work performed and demanding payment of $9,560. No payment was made. Subsequently, Stoudenmire filed and served a notice of mechanic's lien on June 28, 1988, and this action proceeded.

## II.

The master found Stoudenmire had a mechanic's lien against the property of Craig Building Partnership under § 29-5-10. He concluded Stoudenmire had a contract with the owner, Craig Building Partnership, because Robert Creed was both a partner in Craig and president of Pierpoint. The master found Creed was "acting in fact for both Pierpoint and the Partnership when the verbal arrangement between Stoudenmire and Pierpoint was made—even though Stoudenmire did not know it at the time." He also found the second part of Stoudenmire's work (i.e. the $6,810 addition) was done directly for the Craig Partnership because at that time Pierpoint had encountered financial problems and Craig was paying the bills. The master concluded "the fact that Stoudenmire

was not aware of the situation does not change the facts."

A proceeding to enforce a mechanic's lien is legal in nature and this court's scope of review is limited to determining if there is any evidence to support the ruling of the trial court. *Southern Pole Bldgs., Inc. v. Williams*, 289 S.C. 521, 347 S.E. (2d) 121 (Ct. App. 1986). We agree in part with the master's conclusion that Stoudenmire has a lien pursuant to § 29-5-10. The code section gives a mechanic's lien to a person who by agreement or with the consent of the owner performs labor upon or furnishes materials in the erection of a structure. The lien is not affected by the amount of the contract between the owner and the contractor. *Ringer v. Graham*, 286 S.C. 14, 331 S.E. (2d) 373 (Ct. App. 1985).

We find some evidence in the record to support the finding that Stoudenmire had a direct contract with Craig Building Partnership, the owner, as to the $6,810 additional work performed in March. Everett Stoudenmire testified he dealt with Carmen David, the project manager from Pierpoint Construction. He made his initial subcontract agreement of $2,750 with David. When the problem developed with the use of the old equipment, he approached David and gave David the quote on March 16 for the additional work. David informed Stoudenmire he would have to get approval. David came back to Stoudenmire on March 18 and said he had gotten approval for the additional work.[2] At this time Pierpoint, Inc. had become insolvent. Craig Partnership had begun paying all bills including payroll.[3] There is a reasonable inference that after March 16 Craig took over the construction job and simply hired Pierpoint, Inc.'s employees to complete the job. At that point, Carmen David became an employee and agent of Craig Partnership. 53 Am. Jur. (2d) *Mechanic's Liens* § 122 (1970). As agent, he had the authority to bind Craig to pay for the additional work. Therefore, Stoudenmire had an agreement with the owner through its agent, Carmen David, to do the additional work. *See Wood v. Hardy*, 235 S.C. 131, 146, 110 S.E. (2d) 157, 164 (1959).

---

[2] The record does not reflect who gave this approval, but Craig agrees approval for the job was obtained.

[3] According to Craig's witnesses, Pierpoint's employees remained on the job and were paid by Craig. No disbursements were made by Craig to Pierpoint, Inc. after March 16, 1988.

## III.

The master also found Stoudenmire had a mechanic's lien under § 29-5-20. This code section and companion § 29-5-40 apply where a subcontractor is involved. The two sections have been held to have the purposes of (1) protecting a party who provides labor or materials in the improvement of the owner's property but does not have a contract with the owner; and (2) protecting the owner of the property by limiting his liability and that of his property in respect to all such liens to the amount due by the owner on the contract price of the improvement made. *Lowndes Hill Realty Co. v. Greenville Concrete Co.*, 229 S.C. 619, 93 S.E. (2d) 855 (1956).

Stoudenmire had a subcontract for $2,750 with the general contractor, Pierpoint, Inc., to perform the heating and air conditioning work. In order to assert its lien for this amount against the property of the owner under § 29-5-20 Stoudenmire was required to give written notice to the owner, Craig Building Partnership. *S.C. Code Ann.* § 29-5-30 (Rev. 1991). The owner's liability under the lien is limited to the balance due by him to the prime contractor at the time the owner receives the notice from the subcontractor. *Lowndes Hill*, 229 S.C. 619, 93 S.E. (2d) 855.

The record establishes the contract price between Craig Building Partnership and Pierpoint Inc. was $173,403. As of June 16, 1988, Craig had spent $178,611.29 to finish the project. This amount exceeds the contract price by $5,208.29. Stoudenmire filed his notice of mechanic's lien on June 28, 1988. Accordingly, Craig argues Stoudenmire cannot recover because no balance remained due to Pierpoint at the time the notice of lien was filed.

■ Craig's argument is in error in one important detail. It fails to consider the letter written by Stoudenmire on April 22, 1988, informing both Pierpoint and Craig of Stoudenmire's claim. The letter provides sufficient written notice to the owner to meet the requirements of § 29-5-40. *Lowndes Hill*, 229 S.C. 619, 93 S.E. (2d) 855 (statute does not prescribe form of notice).

■ Under § 29-5-40 Craig Building Partnership's liability to Stoudenmire was limited to the balance due by Craig to Pierpoint on the contract price at the time Craig received notice from Stoudenmire. We have determined

this notice was given on April 22, 1988. However, we are confronted with a situation similar to that contained in *Wood v. Hardy* in which a general contractor abandoned a project before completion. In trying to determine the amount owed to the general contractor by the owner, the Supreme Court recognized the owner potentially incurred damages as a result of the failure of the general contractor to erect the dwelling according to plans. The court remanded the case for "the taking of testimony as to the amount of damages sustained by the [owner] due to the breach of the construction contract by [the general contractor] so as to determine what amount, if any, is due to [the general contractor] for work done and materials furnished prior to the abandonment of the contract." *Wood*, 235 S.C. at 147, 110 S.E. (2d) at 164. Therefore, we remand this matter to the master for a determination of how much, if anything, Craig owed Pierpoint on April 22, 1984.[4] This amount should be determined by the receipt of evidence of the value of the labor and materials furnished by Pierpoint to Craig on or before March 16, 1988. The court should then determine the amount paid to Pierpoint by Craig on or before March 16, 1988. If the value of the labor and materials furnished by Pierpoint exceeds the sum paid by Craig to Pierpoint, then Stoudenmire is potentially entitled to a lien up to the amount of the excess. However, the court should also consider the amount of damages, if any, Craig suffered as a result of the failure of Pierpoint to complete the contract. *See Wood v. Hardy*, 235 S.C. at 147, 110 S.E. (2d) at 164.

The decision of the master is affirmed in part, reversed in part, and remanded for a determination of whether Stoudenmire has a lien under § 29-5-20 as to all or some part of the $2,750 claimed for work done in phase one of the installation job.

Affirmed in part, reversed in part, and remanded.

SHAW and BELL, JJ., concur.

---

[4]Because no work was done by Pierpoint and no payments were made by Craig to Pierpoint after March 16, 1988, the sum owed on April 22, 1988, necessarily must be the same as the sum owed on March 16, 1988.