631 S.E.2d 252

BUTLER CONTRACTING, INC., Respondent/Appellant,

v.

COURT STREET, LLC; Morris Construction Co.; and Central Carolina Bank, Defendants,

Of whom Court Street, LLC, and Morris Construction Co. are Appellants/Respondents.

No. 26160.

Supreme Court of South Carolina.

Heard April 19, 2006.
Decided May 30, 2006.

122

124

Thomas E. Dudley, III, and John T. Crawford, Jr., both of Kenison & Dudley, LLC, of Greenville, for Appellants/Respondents.

Craig H. Allen, of Greenville, for Respondent/Appellant.

Chief Justice TOAL:

This appeal raises issues relating to whether a mechanic's lien was timely perfected and the denial of prejudgment interest to the prevailing party. We affirm in part and reverse in part.

### FACTUAL/PROCEDURAL BACKGROUND .

Butler Contracting, Inc. (Subcontractor) signed a contract with Morris Construction Co. (Contractor) to provide labor and materials for interior walls and ceilings in a commercial renovation project. Court Street, LLC (Owner) hired the companies to transform and expand a former church site in Greenville into condominiums. The original contract amount between Subcontractor and Contractor was $493,156.[1] Including additional work and change orders, Subcontractor asserted it was owed a total of $713,364, of which Contractor paid $536,363, leaving a balance due of $177,001.

Henry Holseberg, a principal owner of both Owner and Contractor who apparently controlled both companies, did not dispute the original contract amount, the various amounts for additional work and changes asserted by Subcontractor, or the amount still owed to Subcontractor. Owner, however, filed a counterclaim seeking an offset for $94,878 in damages allegedly caused by delays attributable to Subcontractor and work which Subcontractor failed to timely or properly perform.[2]

During construction, Owner or Contractor apparently began having financial difficulties and fell behind in payments to various companies working on the project. Contractor did not prepare contemporaneous records of tasks Subcontractor allegedly failed to perform or provide detailed back-charges to Subcontractor as the project progressed. Instead, Contractor declined to pay Subcontractor's invoices in full. After Subcontractor filed a notice of mechanic's lien and a lawsuit seeking to enforce the lien, Contractor reviewed past records such as time and material sheets in an attempt to document the proper amount of back-charges allegedly owed by Subcontrac-

---

1. We have rounded off dollar amounts.

2. Owner purchased a surety bond pursuant to S.C.Code Ann. § 29–5–110 (Supp.2005) to release the lien against the real property.

tor. Contractor's staff made these calculations during or after Holseberg's deposition; some two years after the project was completed.

Holseberg testified the work Subcontractor failed to do included work in the church basement, repairing areas damaged by other subcontractors, completing changes requested by owners who had purchased units, and completing "punch lists" of minor problems in finished units. Contractor eventually hired a drywall finisher fired by Subcontractor to help complete the necessary work. There apparently was some degree of miscommunication and disagreement between the parties regarding changes and repairs, with Subcontractor insisting it properly performed the work and objecting to potential back-charges due to confusion about which company had performed repairs.

Subcontractor provided labor and materials at the project on a regular basis from mid–1999 until December 2000, although it apparently was not constantly at the jobsite due to delays caused by asbestos removal and the work of other subcontractors. Danny Hodge testified Subcontractor was supposed to perform additional work in the church basement after December 2000, and was ready, willing, and able to do so, but Contractor never asked Subcontractor to complete the work.

In early 2001, Subcontractor, at the request of Contractor's supervisor, delivered one box of ceiling tiles to replace tiles at the project which had been damaged by water leaks. Hodge testified the ceiling tiles were surplus materials from the project stored at Subcontractor's warehouse. Subcontractor routinely included the cost of replacing some damaged ceiling tiles in its estimates, and often provided replacement tiles even though it was not explicitly required to do so by a particular contract. A project foreman for Contractor signed a form accepting delivery of the tiles. Holseberg testified the tiles were not needed, although he was uncertain whether they were used.

Subcontractor filed a notice and certificate of its mechanic's lien in circuit court approximately one month after delivering the ceiling tiles. About two months later, Subcontractor filed a lawsuit in circuit court against Owner and Contractor,

asserting causes of action based in contract, the mechanic's lien statute, and quantum meruit. Subcontractor sought the balance due of $177,001, attorney's fees, prejudgment interest, and foreclosure and sale of the real property to satisfy its lien.

The case was referred with finality to a master-in-equity. After a bench trial, the trial court found the mechanic's lien had been timely served and recorded as required by statute. The trial court awarded $152,001 to Subcontractor, which represented a reduction of $25,000 from the original demand stemming from delays attributable to Subcontractor. The trial court did not offset any damages claimed by Contractor for work it allegedly performed that was Subcontractor's responsibility. Subcontractor requested payment of attorney's fees of $43,529 as the prevailing party, and the trial court separately awarded $35,000 in attorney's fees. The trial court denied Subcontractor's request for prejudgment interest.

Owner and Contractor appealed and Subcontractor cross-appealed. We certified this case from the court of appeals pursuant to Rule 204(b), SCACR, and the parties present the following issues for review:

I. Did the trial court err in ruling Subcontractor timely served and recorded its mechanic's lien?

II. Did the trial court err in ruling Subcontractor was not entitled to prejudgment interest on the balance due?

## STANDARD OF REVIEW

A proceeding for the enforcement of a statutory lien, such as a mechanic's lien, is legal in nature. *Willard v. Finch,* 123 S.C. 56, 116 S.E. 96 (1923); *Stoudenmire Heating & Air Conditioning Co. v. Craig Bldg. Partnership,* 308 S.C. 298, 301, 417 S.E.2d 634, 636 (Ct.App.1992). In an action at law, when a case is tried without a jury, the trial court's findings of fact will be upheld on appeal when they are reasonably supported by the evidence. Stated another way, the trial court's findings of fact will not be disturbed on appeal unless wholly unsupported by the evidence or unless it clearly appears the findings were influenced or controlled by an error of law. The trial court's findings in such a case are equivalent to a jury's findings in a law action. *Townes Assocs., Ltd. v. City*

*of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976); *Willard,* 123 S.C. at 58, 116 S.E. at 96; *Stoudenmire,* 308 S.C. at 301, 417 S.E.2d at 636.

## LAW/ANALYSIS

### I. Perfection of Mechanic's Lien

Owner argues the trial court erred in ruling that Subcontractor timely served and recorded a mechanic's lien within the statutory ninety-day deadline. Owner asserts that Subcontractor's "unilateral, unsolicited delivery" of one box of ceiling tiles to the jobsite did not revive Subcontractor's expired right to file a mechanic's lien. The delivery of "surplus materials" was not required by the contract, and the materials were "merely provided as a gratuity or an act of friendly accommodation." In fact, the delivery was nothing more than "a contrived effort to revive lien rights." We disagree.

■ "A person to whom a debt is due for labor performed or furnished or for materials furnished and actually used in the erection, alteration, or repair of a building or structure upon real estate," by virtue of an agreement with or with the consent of the owner or his agent, shall have a mechanic's lien upon the real property to secure payment of the debt. S.C.Code Ann. § 29-5-10(a) (Supp.2005). The right to a lien arises inchoate; i.e., when the labor is performed or material is furnished, the right exists but the lien has not been perfected. *Preferred Sav. and Loan Assn., Inc. v. Royal Garden Resort, Inc.,* 301 S.C. 1, 3, 389 S.E.2d 853, 854 (1990); *Wood v. Hardy,* 235 S.C. 131, 138, 110 S.E.2d 157, 160 (1959); *Williamson v. Hotel Melrose,* 110 S.C. 1, 30, 96 S.E. 407, 409 (1918). When the person claiming the lien was employed by someone other than the owner, such as a contractor, he must notify the owner of the furnishing of labor or material in order for the lien to attach to the property. S.C.Code Ann. § 29-5-40 (1991); *Lowndes Hill Realty Co. v. Greenville Concrete Co.,* 229 S.C. 619, 629, 93 S.E.2d 855, 860 (1956); *Shelley Constr. Co. v. Sea Garden Homes, Inc.,* 287 S.C. 24, 26-27, 336 S.E.2d 488, 490-91 (Ct.App.1985).[3]

---

**3.** Section 29-5-40 does not contain a time limit for providing written notice to the owner when the person asserting the lien is employed by

■ In order to perfect and enforce a mechanic's lien, the person asserting the lien (1) must serve upon the owner or person in possession and file with the register of deeds or clerk of court a notice or certificate of lien containing the lien amount, a description of the real property, and other required information "within ninety days after he ceases to labor on or furnish labor or materials for such building or structure"; (2) must commence a lawsuit seeking to enforce the lien within six months after ceasing to provide labor or materials for such real property; and (3) must file a notice of the pending action (lis pendens) within six months after ceasing to provide labor or materials for such real property. S.C.Code Ann. §§ 29–5–90 and 29–5–120 (1991 & Supp.2005); *Preferred Sav. & Loan Assn.*, 301 S.C. at 3–4, 389 S.E.2d at 854; *Franke Associates by Simmons v. Russell*, 295 S.C. 327, 329, 368 S.E.2d 462, 463 (1988); *Multiplex Bldg. Corp. v. Lyles*, 268 S.C. 577, 235 S.E.2d 133 (1977); *Crystal Pools, Inc. v. Old Claussen's Bakery Partners*, 303 S.C. 68, 399 S.E.2d 5 (Ct.App.1990). If these steps are taken, the person claiming the lien may foreclose against the property to satisfy the debt. On the other hand, if he fails to take any one of these steps, the lien against the property is dissolved pursuant to Sections 29–5–90 and 25–9–120. The failure to perfect a mechanic's lien does not preclude an action on the debt. *Shelley Constr. Co.*, 287 S.C. at 27, 336 S.E.2d at 490.

■ The time limits run from the same event: the certificate of lien must be filed within ninety days, and the foreclosure suit (and accompanying notice of pending action) must be commenced within six months after the person asserting the lien ceases to furnish labor or materials. The effect of these provisions is that the six-month limitations period for enforcing the lien necessarily commences no later than the date the certificate of lien is filed. If suit is not commenced within six months after the date the certificate of lien is filed, title

---

someone other than the owner. *Wood*, 235 S.C. at 138, 110 S.E.2d at 160; *Lowndes Hill Realty Co.*, 229 S.C. at 629, 93 S.E.2d at 860; *see also Stovall Bldg. Supplies, Inc. v. Mottet*, 305 S.C. 28, 32, 406 S.E.2d 176, 178 (Ct.App.1990) (reversing foreclosure on mechanic's lien because material supplier, which had contract with subcontractor, failed to give required notice of lien to homeowner before homeowner paid general building contractor in full).

examiners may assume that the mechanic's lien is dissolved.[4] *Preferred Sav. & Loan Assn.*, 301 S.C. at 4–5, 389 S.E.2d at 854–55. A mechanic's lien is purely statutory. Therefore, the requirements of the statute must be strictly followed. *Lyles*, 268 S.C. at 578, 235 S.E.2d at 134.

In *Wood*, a residential contractor abandoned the construction of a house midway through the job. The materials provider had not been paid by the contractor. The materials provider agreed to furnish the rest of the materials, and the provider and homeowner agreed to hire others to complete the house. The homeowner moved into the house upon completion. Approximately one month later, the materials provider, acting upon a complaint by the homeowner, sent a plumber to properly complete the kitchen drain line by installing two pieces of pipe costing about $4. The materials provider subsequently served and filed a notice of mechanic's lien within ninety days of effecting the minor plumbing repair, but not within ninety days of the provision of any other material or labor. *Wood*, 235 S.C. at 133–36, 110 S.E.2d at 157–59.

The homeowner argued the minor plumbing repair was so "trivial or inconsequential" that it was insufficient to extend the time for serving a mechanic's lien beyond the date the bulk of materials and labor had been provided. This Court disagreed, noting, as other courts had in similar cases, that the statute does not specify any particular amount of materials or labor which must be furnished. *Wood*, 235 S.C. at 136–40, 110 S.E.2d at 159–61.

"[W]here a claimant, after a contract is substantially completed, does additional work or furnishes additional material which is necessary for the proper performance of his contract, and which is done in good faith at the request of the owner or for the purpose of fully completing the contract, and not merely as a gratuity or act of friendly accommodation, the

---

4. As we have explained:

> If the certificate of lien is filed on the date that labor ceases, suit must be brought within six months thereafter. For each additional day between the date of cessation of labor and the date of filing, the time between filing and commencement of suit is reduced by one day. Thus, if the certificate were filed on the 90th day after cessation of labor, suit must be commenced three months after the filing.

*Preferred Sav. & Loan Assn.*, 301 S.C. at 4 n. 1, 389 S.E.2d at 855 n. 1.

period for filing the lien will run from the doing of such work or the furnishing of such materials, irrespective of the value thereof." *Wood*, 235 S.C. at 140, 110 S.E.2d 157 at 161. The deadline to serve and record a mechanic's lien begins running from the date the last material was furnished or work performed, regardless of whether such material or work is insignificant and regardless of whether the final work is delayed, provided the reason for the delay is not to improperly extend the period for perfecting the lien. *Id.; accord Crystal Pools*, 303 S.C. at 68, 399 S.E.2d at 5 (warranty work performed by carpeting contractor five months after initial installation of carpeting, which was necessary to complete performance under the contract, constituted furnishing of labor or materials and extended time for perfecting mechanic's lien).

 The position adopted in *Wood*, as reflected in foreign precedent cited in that 1959 opinion, has not changed substantially in more recent cases from other courts. "[W]hen an unreasonable period of time has elapsed since substantial completion of the work, the performance of trivial services or the furnishing of trivial materials generally will not extend the time for filing the certificate past the date of substantial completion. . . . If, however, subsequent to the date of substantial completion, trivial services or materials are provided at the request of the owner, rather than at the initiative of the contractor for the purpose of saving a lien, the furnishing of such work or material will extend the commencement of the period for filing a certificate of mechanic's lien." *F.B. Mattson Co. v. Tarte*, 247 Conn. 234, 719 A.2d 1158, 1161 (1998) (holding that, although roofing project had been substantially completed more than a month earlier, deadline to file mechanic's lien began to run upon removal of scaffolding and roofing brackets from property at request of owner); *accord Franklin Bldg. Supply Co. v. Sumpter*, 139 Idaho 846, 87 P.3d 955, 959–61 (2004) (deadline to file mechanic's lien began to run when builder purchased a sheet of cedar and locking door handle for house, not when certificate of occupancy was issued several weeks earlier; although dollar value of items was minimal, they were actually used in constructing and repairing the home, were reasonably necessary to complete construction and punch list according to terms of contract, were not merely trivial or insubstantial, and purchases were not intended to

extend time for filing lien); *Interstate Elec. Servs. Corp. v. Cummings Props., LLC,* 63 Mass.App.Ct. 295, 825 N.E.2d 1059, 1063–64 (2005) (mere delay in completing contract and performance of trifling items of work have never been held under Massachusetts statute fatal to maintenance of a mechanic's lien when work was done in good faith and was necessary to a complete performance of the contract); *Security Ben. Life Ins. Corp. v. Fleming Companies,* 21 Kan.App.2d 833, 908 P.2d 1315, 1321–22 (1995) (for purposes of mechanic's lien filing deadline, store checkout system installer last performed work on date it set up direct store delivery system and trained employees on its use; although other work was completed earlier, work performed on that date was necessary to comply with terms of contract); 53 Am.Jur.2d *Mechanics' Liens* § 211 (1996).

In the present case, Contractor asked Subcontractor to provide a single box of ceiling tiles to replace water-damaged tiles. As shown by a delivery form signed by Contractor's supervisor, Subcontractor provided the tiles in early 2001. The trial court correctly ruled that Subcontractor, in this instance, furnished additional materials which were necessary for the proper performance of the contact, and did so in good faith at the request of Contractor or for the purpose of fully completing the contract. Subcontractor did not provide the materials merely as a gratuity or an act of friendly accommodation; nor did Subcontractor provide the materials merely to improperly extend the period for perfecting its lien.

Subcontractor routinely provided such materials on its projects to properly complete the job and foster a good reputation. Although it was not explicitly required by contract to leave surplus tiles on site or replace tiles damaged by others during the construction process, the parties implicitly considered the provision of such materials necessary to comply with the contract and fulfill the duty of good faith and fair dealing which is an implied term of every contract. *E.g. Tharpe v. G.E. Moore Co.,* 254 S.C. 196, 201, 174 S.E.2d 397, 399 (1970) ("There exists in every contract an implied covenant of good faith and fair dealing.").

The trial court's ruling that the deadline for Subcontractor to file a mechanic's lien began to run upon delivery of the box of ceiling tiles to the jobsite at the request of Contractor is reasonably supported by the evidence. Accordingly, we affirm the trial court's decision that Subcontractor timely perfected its mechanic's lien pursuant to Sections 29-5-90 and 29-5-120.

## II. Prejudgment Interest

■ Subcontractor contends the trial court erred in denying its request for prejudgment interest because the amount owed was certain or capable of being reduced to certainty upon demand for payment. We agree.

■ The law has long allowed prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty. *Smith–Hunter Constr. Co. v. Hopson,* 365 S.C. 125, 128, 616 S.E.2d 419, 421 (2005); *Babb v. Rothrock,* 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993); *Ancrum v. Slone,* 29 S.C.L. (2 Speers) 594 (1844). Stated another way, prejudgment interest is allowed on a claim of liquidated damages; i.e., the sum is certain or capable of being reduced to certainty based on a mathematical calculation previously agreed to by the parties. Prejudgment interest is not allowed on an unliquidated claim in the absence of an agreement or statute. *Babb,* 310 S.C. at 350, 426 S.E.2d at 791; *Builders Transport, Inc. v. S.C. Prop. & Cas. Ins. Guar. Assn.,* 307 S.C. 398, 406, 415 S.E.2d 419, 424 (Ct.App.1992); *Wayne Smith Constr. Co. v. Wolman, Duberstein, and Thompson,* 294 S.C. 140, 146–47, 363 S.E.2d 115, 119 (Ct.App.1987).

■ The fact that the amount due is disputed by the opposing party does not render the claim unliquidated for the purposes of an award of prejudgment interest. The proper test for determining whether prejudgment interest may be awarded is whether the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose. *Smith–Hunter Constr. Co.,* 365 S.C. at 128, 616 S.E.2d at 421; *Babb,* 310 S.C. at 353, 426 S.E.2d at 791; *Wayne Smith Constr. Co.,* 294 S.C. at 146–47, 363 S.E.2d at 119. The right of a party to prejudgment interest is not

affected by rights of discount or offset claimed by the opposing party. It is the character of the claim and not the defense to it that determines whether prejudgment interest is allowable. *Lee v. Thermal Engineering Corp.*, 352 S.C. 81, 88–89, 572 S.E.2d 298, 302' (Ct.App.2002); *Southern Welding Works, Inc. v. K & S Constr. Co.*, 286 S.C. 158, 164, 332 S.E.2d 102, 106 (Ct.App.1985).

 A judgment debtor is required to pay interest on his debt as compensation for his continued retention and use of the creditor's money beyond the date payment was due. *Sears v. Fowler*, 293 S.C. 43, 45–46, 358 S.E.2d 574, 575 (1987). In South Carolina, prejudgment interest is set by statute at annual rate of 8 percent, although parties are free to agree, within legal limits, on a higher rate of interest. S.C.Code Ann. § 34–31–20(A) (Supp.2005); *Turner Coleman, Inc. v. Ohio Constr. & Engr., Inc.*, 272 S.C. 289, 292, 251 S.E.2d 738, 740 (1979).

In the present case, the trial court denied Subcontractor's claim for prejudgment interest because there was a "good faith dispute by [Owner and Contractor] as to the amount due." This ruling conflicts with established law and it is not reasonably supported by the evidence.

The parties do not dispute the amount of the original contract. Including additional work and change orders, Subcontractor asserted it was owed a total of $713,364, of which Contractor paid $536,363, leaving a balance due of $177,001. Contractor did not dispute the various amounts for additional work and changes asserted by Subcontractor, or the amount still owed to Subcontractor. Contractor, however, filed a counterclaim seeking an offset for $94,878 in damages allegedly caused by delays attributable to Subcontractor and work which Subcontractor failed to timely or properly perform.

We hold the trial court erred in denying the award of prejudgment interest because Subcontractor asserted a claim for liquidated damages. The amount Contractor owed Subcontractor was a certain sum or capable of being reduced to a certainty based on contractual provisions regarding the amount of the original contract, the amount of change orders approved by Contractor, and payments made by Contractor. In this case, the trial court should have awarded prejudgment interest to Subcontractor after determining the amount Con-

tractor owed Subcontractor. Furthermore, Contractor's assertion of a counterclaim seeking an offset does not prevent an award of prejudgment interest because it is the character of the claim and not the defense to it that determines whether prejudgment interest is allowable.

We reverse the trial court's order refusing to award prejudgment interest to Subcontractor and remand this case for calculation of prejudgment interest on the sum of $152,001 from the date Subcontractor filed its notice and certificate of mechanic's lien in circuit court.

## CONCLUSION

We affirm the trial court's decision that Subcontractor timely perfected its mechanic's lien and the verdict awarding damages to Subcontractor. We reverse the trial court's order refusing to award prejudgment interest to Subcontractor and remand this case for the calculation of such interest.

We affirm the rulings of the trial court on the remaining issues raised by Owner and Contractor pursuant to Rule 220(c), SCACR, and the following authorities: Issues II, III, and IV: *Willard v. Finch*, 123 S.C. 56, 116 S.E. 96 (1923); *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976); *Stoudenmire Heating & Air Conditioning Co. v. Craig Bldg. Partnership*, 308 S.C. 298, 301, 417 S.E.2d 634, 636 (Ct.App.1992).

MOORE, WALLER, PLEICONES, JJ., and Acting Justice R. KNOX McMAHON, concur.