641 S.E.2d 459

**TAYLOR, COTTON & RIDLEY, INC., Respondent,**

v.

**OKATIE HOTEL GROUP, LLC; The Devcon Group, Inc., Sun-Trust Bank, Savannah, N. A.; Capitol Materials of Savannah, Inc., Pro Slab, Inc. f/k/a OPP, Incorporated; Genco of Simpsonville, Inc., Imperial Marble Corporation; Turner Electrical of South Carolina, Inc., Cassidy of South Carolina, Inc., Cassidy O'Sullivan & Co.; Best Plumbing, Inc. and Malphrus Construction Company, Inc., Defendants,**

**Of whom Okatie Hotel Group, LLC is the Appellant.**

**No. 4194.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2006.

Decided Jan. 8, 2007.

W. Duvall Spruill, of Columbia, for Appellant.

John S. Nichols, of Columbia; Marvin H. Dukes, of Beaufort, for Respondent.

SHORT, J.:

Okatie Hotel Group, LLC (Owner) appeals the trial court's failure to consider settlement payments to seven other subcontractors (Other Subcontractors) and damages to the building when determining Owner's liability to Taylor, Cotton and Ridley, Inc. (Subcontractor). Owner also appeals the trial court's disregard of a waiver made by Subcontractor, use of an interest rate greater than the statutory maximum, and award of attorneys' fees. We affirm in part, reverse in part, and remand.

## FACTS

The Devcon Group, Inc. (General Contractor) served as the general contractor for Owner's development of the Marriott Fairfield Inn. General Contractor hired Subcontractor to install door frames and locks for the development at an original contract price of $91,570.00. This original contract price increased to $115,085.75, due to additional line items, a revised door frame jam, and installation of "Ving card" locks. Subcontractor finished all major work and billed General Contractor by November 23, 1999, but was called back to the job site on several occasions to perform further installations and re-

pairs. By December 6, 1999, Subcontractor had submitted a notice of non-payment and received $20,000 toward the total contract price of $115,085.75. The last service performed by Subcontractor was on March 8, 2000, when Subcontractor returned to install and repair exterior door locks. On April 24, 2000, Subcontractor filed a mechanic's lien for the $95,085.75 which remained due under the contract.

The amended total contract between General Contractor and Owner was $2,421,656.00, and prior to Subcontractor's lien filing, Owner paid General Contractor $2,166,613.00. Other Subcontractors claimed liens totaling $146,330.00, but, following mediation in the spring of 2001, they settled for $92,385.00. All Other Subcontractors participated in this mediation, but Subcontractor did not.

Subcontractor filed suit against General Contractor and Owner to enforce Subcontractor's lien against the developed property. At trial, the court adjusted the contract price by first decreasing it to $2,417,564.00 to reflect back charges, and then by increasing it to $2,461,510.00 to include change orders. The trial court found no adjustments were necessary for liquidated damages and held General Contractor and Owner were jointly and severally liable to Subcontractor for the lien of $95,085.15 with a 1.5% interest rate beginning in December of 1999. This accrued interest brought the total judgment amount to $184,940.62. In addition to this amount, the court, through a subsequent order issued on September 22, 2005, awarded Subcontractor $31,272.19 in attorney's fees and costs. This appeal followed.

## STANDARD OF REVIEW

"A proceeding for the enforcement of a statutory lien, such as a mechanic's lien, is legal in nature." *Butler Contracting, Inc. v. Court Street, LLC*, 369 S.C. 121, 127, 631 S.E.2d 252, 255 (2006) (citing *Willard v. Finch*, 123 S.C. 56, 116 S.E. 96 (1923)). In an action at law tried without a jury, the trial court's findings of fact will be upheld on appeal when the findings are reasonably supported by the evidence. Butler Contracting, 369 S.C. at 126, 631 S.E.2d at 255. The trial court's findings of fact will not be disturbed on appeal unless wholly unsupported by the evidence or clearly influenced or

controlled by an error of law. *Id.* at 126–28, 631 S.E.2d at 255–56.

## LAW/ANALYSIS

### I. Credit for Payments to Other Subcontractors

 Owner argues that sections 29–5–20, 29–5–40, and 29–5–60 of the South Carolina Code (Supp.2005) require the trial court to credit Owner for the settlement reached with Other Subcontractors before determining the amount owed Subcontractor. Owner paid Other Subcontractors 66.6% of their claimed lien amounts and sought to limit any amount paid to Subcontractor to this same percentage. At the time Owner settled with Other Subcontractors through mediation, Owner was aware of Subcontractor's outstanding lien. The trial court held that Subcontractor was not bound by the prorated limit in the settlement between Owner and Other Subcontractors. We agree.

Section 29–5–20(a) states:

Every laborer, mechanic, subcontractor, or person furnishing material for the improvement of real estate when the improvement has been authorized by the owner has a lien thereon, subject to existing liens of which he has actual or constructive notice, to the value of the labor or material so furnished, including the costs of the action and a reasonable attorney's fee which must be determined by the court in which the action is brought but only if the party seeking to enforce the lien prevails. If the party defending against the lien prevails, the defending party must be awarded costs of the action and a reasonable attorney's fee as determined by the court. The fee and the court costs may not exceed the amount of the lien. The lien may be enforced as herein provided.

Additionally section 29–5–40 states:

Whenever work is done or material is furnished for the improvement of real estate upon the employment of a contractor or some other person than the owner and such laborer, mechanic, contractor or materialman shall in writing notify the owner of the furnishing of such labor or material and the amount or value thereof, the lien given by

§ 29–5–20 shall attach upon the real estate improved as against the true owner for the amount of the work done or material furnished. *But in no event shall the aggregate amount of liens set up hereby exceed the amount due by the owner on the contract price of the improvement made.* *(emphasis added).*

■ The main purposes of sections 29–5–20 and 29–5–40 are (1) the protection through a lien of a party, who furnished labor or material but was not a party to a contract with the owner and (2) the protection of the owner by preventing his liability on the liens from exceeding the amount owner owes on the contract price. *Lowndes Hill Realty Co. v. Greenville Concrete Co.,* 229 S.C. 619, 629, 93 S.E.2d 855, 860 (1956).[1] Subcontractor brought this action in order to enforce his lien after providing labor to Owner.

■ The trial court adjusted the contract price to $2,461,510.00 based on change orders and back charges. Owner paid General Contractor $2,166,613.00, and Owner settled with Other Subcontractors for $92,385.00, which leaves a difference of $202,512.00 between the contract price and the amount paid by Owner. Subcontractor's lien is for $95,085.75. Therefore, section 29–5–40 is not violated because the difference between the contract price and amount Owner already paid is greater than Subcontractor's lien amount.

■ Section 29–5–60(a) (Supp.2005) imposes a duty on Owner to settle and states: "In the event the amount due the contractor by the owner is insufficient to pay all the lienors acquiring liens as herein provided it is the duty of the owner to prorate among all just claims the amount due the contractor." When a lien attaches the subcontractor has a "just claim." *Charleston Lumber Co., Inc. v. GPT,* 303 S.C. 350, 353, 400 S.E.2d 508, 510 (Ct.App.1991). Subcontractor attached a lien for $95,085.75, which gave subcontractor a just claim.

■ Subcontractor's just claim creates a duty on Owner under section 29–5–60. "The cardinal rule of statutory con-

---

1. This cited case refers to sections 45–252 and 45–254 of the South Carolina Code. These sections have since become sections 29–5–20 and 29–5–40, respectively.

struction is that words used in a statute should be given their plain and ordinary meaning unless something in the statute requires a different interpretation." *Seckinger v. Vessel Excalibur,* 326 S.C. 382, 387, 483 S.E.2d 775, 777 (Ct.App.1997). A plain reading of section 29–5–60 requires an owner to prorate just claims when they exceed the amount due under the contract, but does not create a duty for the subcontractor to accept the prorated settlement.

The Mechanic's Lien statute (Section 29–5–60) does not credit owners who settle claims of non-perfected lien holders. *Charleston Lumber,* 303 S.C. at 353, 400 S.E.2d at 510. In the same regard, the Mechanic's Lien statute does not contain a provision requiring Subcontractor to settle or be forced to receive a prorated judgment as long as the aggregate amount of the liens do not exceed the amount due by the owner on the contract price. *See* §§ 29–5–20, 29–5–40, and 29–5–60. Therefore, a trial court need only consider whether a prior settlement agreement decreases the owner's contract liability to an amount smaller than the litigated lien. In this case, the settlement with Other Subcontractors did not decrease the remaining liability to a sum smaller than Subcontractor's lien. Accordingly, the trial court properly determined that Subcontractor's lien was enforceable and did not violate South Carolina law.

## II. Consideration of Property Damages

Owner argues the trial court should have considered damage to the developed building when it determined the adjusted contract price which was used to calculate Owner's remaining liability to the General Contractor and, ultimately, to Subcontractor.[2] We disagree.

[10] In a claim to enforce a mechanic's lien, the trial court's findings are not to be disturbed unless the findings are wholly unsupported by evidence. *Butler Contracting,* 369 S.C. at 126–28, 631 S.E.2d at 255–56. In this case, the trial court adjusted the contract price based on back charges and change orders. The damages Owner feels the trial court should have

---

2. As per § 29–5–40, Subcontractor could not claim a lien for an amount in excess of the amount still owed to the General Contractor under the contract.

considered concern the alleged improper installation of insulation resulting in $651,551.00 in mold damage to the building. Owner sought to have this amount deducted from the adjusted contract price prior to determining its liability to Subcontractor. The trial court excluded evidence regarding mold damage as inapplicable to this litigation holding "after discovered negligence may not be asserted by way of off-set because it has not pled." Because the damage was not discovered until after Owner's pleading was submitted, the pleading obviously did not contain any reference to the damage. Moreover, evidence exists in the record that General Contractor may not have caused the mold problem. Owner's own witness testified that he inspected the insulation after its installation and found no problems, and he further testified that he had no evidence that General Contractor was responsible for the faulty insulation. The evidence in the record supports the trial court's finding that mold damage was inapplicable to this matter. Therefore, the trial court's ruling on liquidated damages is affirmed.

### III. Waiver

[11] Owner argues the trial court did not pay sufficient deference to Subcontractor's pay applications, which included a waiver and release of lien clause. We disagree.

"When a contract is unambiguous a court must construe its provisions according to the terms the parties used, understood in their plain, ordinary, and popular sense." *S.C. Farm Bureau Mutual Ins. Co. v. Oates*, 356 S.C. 378, 381, 588 S.E.2d 643, 645 (Ct.App.2003). In this case, the waiver section of the payment application is titled "WAIVER AND RELEASE OF LIEN UPON PROGRESS PAYMENT," and the waiver states Subcontractor agrees to waive and release its lien "in consideration of the progress payment." The trial court found the waiver language in the payment application conditioned the waiver upon payment taking place. It is undisputed that Subcontractor was not paid upon completion of the job. Therefore, the trial court's finding that Subcontractor's payment application included merely a conditioned waiver "to be held in trust pending payment" was supported by the evidence and shall not be disturbed. *See Butler Contracting*, 369 S.C. at 126–28, 631 S.E.2d at 255–56.

## IV. Interest Rate

 Owner disputes the interest rate the trial court ordered Owner to pay Subcontractor because the interest rate exceeds the statutory limit, and Owner and Subcontractor did not contract for a higher interest rate. We agree.

 Section 34–31–20 of the South Carolina Code (Supp. 2005) sets an interest rate for all cases in which money is found to be due. The established pre-judgment legal interest rate for ascertainable sums of money is 8.75% per annum. S.C.Code Ann. § 34–31–20(A) (Supp.2005). The ascertained liquidated damages in this matter are $95,085.75. Despite the existence of section 34–31–20, parties are free to agree to higher interest rates within legal limits. Butler Contracting, 369 S.C. at 134, 631 S.E.2d at 259. The trial court ordered Owner to pay Subcontractor 1.5% per month (18% per annum) prejudgment interest beginning in December 1999, which exceeds the 8.75% statutory annual interest rate. Evidence exists in the record that General Contractor and Subcontractor contractually agreed to a higher interest rate of 1.5% per month. However, Subcontractor and Owner did not contract for a higher interest rate. Therefore, we find Owner is not bound by General Contractor's agreement with Subcontractor. Accordingly, we remand for a determination of a pre-judgment interest rate consistent with section 34–31–20.[3]

## V. Attorneys' Fees

 Owner contends that if this Court reverses some portion of the trial court's order, then Subcontractor would not be the prevailing party and would not be entitled to attorneys' fees. We disagree.

 Section 29–5–20 (A) of the South Carolina Code (Supp.2005) provides attorneys' fees for the prevailing party in

---

3. Subcontractor disputes the preservation of Owner's issue regarding the higher interest rate. In Owner's brief to the trial court, Owner disputes the use of 1.5% per month interest rate based on an agreement between General Contractor and Subcontractor. The trial court's order sets the interest rate as 1.5% per month. Therefore the issue was preserved because it was raised before and ruled upon by the trial court. *See Holy Loch Distrib., Inc. v. Hitchcock*, 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000).

an action to enforce a lien. In an action to enforce a mechanic's lien, the prevailing party receives a favorable decision or verdict on liability. *Seckinger*, 326 S.C. at 388, 483 S.E.2d at 778. The award of attorneys' fees is left undisturbed absent abuse of the trial court's discretion. *Patrick v. Britt*, 364 S.C. 508, 514, 613 S.E.2d 541, 544 (Ct.App.2005). Despite the remand for determination of an interest rate consistent with section 34–31–20, Subcontractor received a favorable verdict regarding liability. Therefore, as the prevailing party, Subcontractor may be properly awarded attorneys' fees.

## CONCLUSION

This court finds the trial court did not err in: 1) refusing to credit Owner for payments made to Other Subcontractors, 2) refusing to consider after discovered property damage in determining the adjusted contract price, 3) finding the waiver clause in the payment application was an unsatisfied conditional waiver, and 4) awarding attorney's fees. We find the trial court erred in its determination of a pre-judgment interest rate. For the reasons stated herein, the trial court's decision is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY, J., and STILWELL, J., concur.