745 S.E.2d 77

ACTION CONCRETE CONTRACTORS, INC., Respondent,

v.

Elvira CHAPPELEAR, Craig Chappelear, Premier Southern Homes, LLC, Henry G. Beal, Jr. and First Citizens Bank and Trust Co., Inc., Defendants,

Of whom Elvira Chappelear and Craig Chappelear are Appellants.

Appellate Case No.2012–207526.

No. 27268.

Supreme Court of South Carolina.

Heard April 30, 2013.

Decided June 12, 2013.

Rehearing Denied July 25, 2013.

314

Joshua Allan Bennett and Franklin H. Turner, III, both of Rogers Townsend & Thomas, PC, of Columbia, for Appellants.

John T. Crawford, Jr. and F. Lee Prickett, III, both of Kenison Dudley & Crawford, LLC of Greenville, for Respondent.

Justice PLEICONES.

This is an appeal from an order granting respondent (Subcontractor) summary judgment in this mechanic's lien foreclosure action brought against Owners. Owners contend we should reverse and remand because there are material issues of fact such that summary judgment is inappropriate. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002) (summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law). We disagree, and affirm.

## FACTS

Appellants Chappelear (Owners) hired defendant Premier Southern Homes LLC (Premier) to construct a model home.

The contract price was $300,000 although an Owner testified that the value of the construction services was in the four hundreds, and that Premier had agreed to the lower price as it intended to showcase its work in Owners' residence. Premier contracted with Subcontractor to do certain work on the property, including building a retaining wall and the home's foundation and walls. Premier failed to pay Subcontractor's final bill of $66,862.63.

On September 25, 2007, within 90 days of its last work on the home, Subcontractor filed and served a notice of mechanics lien and statement of account on Owners. *See* S.C.Code Ann. § 29–5–40 (2007). On September 27, 2007, Subcontractor recorded its mechanics lien. *See* S.C.Code Ann. § 29–5–20 (2007). Subcontractor filed its *lis pendens* and its lien foreclosure complaint on December 27, 2007.

As of September 27, 2007, when Subcontractor's lien was recorded, Owners had paid Premier $135,740 on the $300,000 contract, leaving a balance of $164,260. While Owners made no payments to Premier after notice of Subcontractor's lien, Owners paid $118,931.83 directly to other subcontractors on Premier's behalf during the period between receiving notice of the lien and their firing of Premier on May 2, 2008. Up until that day, Premier remained as the general contractor supervising the subcontractors and the project. One Owner testified that she told Premier she would pay the subcontractors directly while Premier caught up with the money due Subcontractor.

As of May 2, 2008, Owners had paid $254,671.83 for a home that was approximately 68% complete. Owners subsequently bonded off Subcontractor's lien in August 2008 pursuant to S.C.Code Ann. § 29–5–110 (2007). At some point, Owners sold the unfinished house for an undisclosed amount.

Subcontractor moved for summary judgment, and Owners interposed a payment defense. Owners also contended they were entitled to set-off damages they incurred when Premier breached the contract by failing to pay Subcontractor against the moneys due Subcontractor on its lien. The trial judge found the payment defense was a question of law, interpreted

four mechanic's lien statutes,[1] concluded Owners owed Subcontractor the full amount of its lien along with interest, costs, and attorneys fees, and referred the matter to the master to foreclose the lien and determine the exact amounts due. Owners appealed.

## ISSUE

Did the trial court err in granting Subcontractor summary judgment?

## ANALYSIS

An owner has several defenses available to it when a subcontractor asserts a mechanic's lien. First, the lien may be invalid because the subcontractor did not comply with the statutory requirements for perfecting the lien. There is no allegation here that Subcontractor did not properly perfect its lien. Second, the owner may assert he has paid the general contractor the full amount due under the contract before receiving notice of the subcontractor's lien. *E.g., A.V.A. Constr. Co. v. Palmetto Land Clearing*, 308 S.C. 377, 418 S.E.2d 317 (Ct.App.1992). This payment defense is predicated on the last sentence of the subcontractor's lien statute, which provides that "[I]n no event shall the aggregate amount of [subcontractor] liens set up hereby exceed the amount due by the owner on the contract price of the improvement made." S.C.Code Ann. § 29–5–40 (2007).

Owners contend there is an unresolved question of fact as to the value of the work done by Premier as of September 27, 2007, when they received notice of Subcontractor's lien. While there may be such a question, under the facts of this case, the relevant date for determining the value of the "improvement made" under § 29–5–40 is May 2, 2008, Premier's last day on the job. Second, Owners contend the trial court erred in failing to credit them for payments they made to Premier's other subcontractors between receiving notice of Subcontractor's lien and the firing of Premier on May 2, 2008. We find no error.

---

1. S.C.Code Ann. §§ 29–5–20, –40, –50, and –110.

■ We first address Owners' contention that the relevant date for determining "the amount due by the owner on the contract price of the improvement made" under § 29–5–40 is the date they received notice of Subcontractor's lien. We agree that where, as here, the general contractor leaves before the job is finished, the amount due under § 29–5–40 is determined by the percentage of the contracted-for work completed. *E.g., Stoudenmire Heating & Air Conditioning Co. v. Craig Bldg. P'ship,* 308 S.C. 298, 417 S.E.2d 634 (1992); *Wood v. Hardy,* 235 S.C. 131, 110 S.E.2d 157 (1959). That percentage is determined as of the last day the general contractor worked on the job. *Id.* Here, the last day of work was May 2, 2008. While ordinarily the notice of a subcontractor lien follows shortly after the general contractor's abandonment or results in its firing, Premier was allowed to continue to act as the general contractor for 220 days after Subcontractor's lien was noticed. There is no issue of fact that May 2, 2008, is the relevant date for purposes of § 29–5–40. Further, there is no issue that as of that date, the house was 68% complete, nor that the contract price was $300,000.[2] Sixty-eight percent of $300,000 is $204,000.

■ Owners next contend that the trial court erred when it gave them credit only for the $135,740 they paid to Premier before receiving notice of Subcontractor's lien. Owners contend they are entitled to offset that amount plus the $118,931.83 Owners paid directly to Premier's other subcontractors between notice in September 2007 and Premier's last day on the job. Under Owners' theory, since they paid Premier and its subcontractors a total of $254,671.83, and since they were only liable for $204,000 under § 29–5–40, Subcontractor cannot collect on its lien. The circuit court rejected this argument, citing S.C.Code Ann. § 29–5–50. We agree with the circuit court.

■ Section 29–5–50 provides:
Any person claiming a lien under the provisions of this chapter who shall have given the notice provided for herein shall be entitled to be paid in preference to the contractor at

---

**2.** We need not decide in this case whether the fact that the builder had agreed to accept less than the value of his work affects the amount of money available for Subcontractor.

whose instance the labor was performed or material furnished and no payment by the owner to the contractor thereafter shall operate to lessen the amount recoverable by the person so giving the notice.

In other words, "payment by the owner to the general contractor after the owner has received notice of the lien is made at the owner's peril, as it will not effect [sic] the amount recoverable by the party with the mechanics' lien." *Maddux Supply Co. v. Safhi, Inc.,* 316 S.C. 404, 412, 450 S.E.2d 101, 106 (Ct.App.1994).

Owners argue that the circuit court should not have found them "in violation" of § 29–5–50 for paying Premier's other subcontractors directly between September 2007, when they received notice of Subcontractor's lien, and May 2008, when Owners fired Premier. They contend that, by virtue of Subcontractor's lien, it was obvious that Premier was having financial difficulties. Thus, Owners contend that under *Stoudenmire,* they were entitled to begin paying other subcontractors directly. We find nothing in *Stoudenmire* that supports Owners' argument.

In *Stoudenmire* the evidence showed that after the general contractor became insolvent, "[Owner] took over the construction job and simply hired [general contractor's] employee's to complete the job." 308 S.C. at 301, 417 S.E.2d at 636–7. Here, however, Premier remained on the job, supervising the project and the subcontractors who continued to work on the project. Owners did not "take over the job" but instead continued to rely on Premier to act as the general contractor. The circuit court correctly held that Owners cannot reduce the money available to Subcontractor on its lien by amounts they chose to pay for Premier while Premier remained the general contractor. *A.V.A. Construction* teaches that for purposes of the mechanics lien statutes, owners can pay general contractors other than by conveying money directly to them. In *A.V.A. Construction,* the payment took the form of the owner's forgiveness of the general contractor's prior debts; here, Owners paid Premier's debts. Owners' payments to Premier's subcontractors after notice of Subcontractor's lien were "payment by the owner to the contractor" under § 29–5–50. The circuit court properly refused to allow Owners' post-lien direct payments to Premier's other subcontractors to reduce their

obligation to Subcontractor because to do so would violate § 29–5–50 and the policies underlying the entire mechanics lien procedure.[3]

■ Finally, Owners contend summary judgment was inappropriate because there remains a material issue of fact as to the moneys they paid to finish Premier's work or repair work done by Premier's subcontractors. They contend they would be entitled to offset funds expended as a result of Premier's abandonment of the job against their debt to Subcontractor. We find summary judgment appropriate here.

■ Where a general contractor abandons the job before work is complete and the lienholder does not give the owner notice until after that juncture, the owner is entitled to credit for damages, if any, incurred by the owner to finish the general contractor's work. *Stoudenmire, supra.* Further, where the general contractor has abandoned the job before completion, the subcontractor gives notice after the project is complete, and the original general contractor's work was shoddily performed, the owner may be entitled to offset moneys spent to repair that work against the lienholder's recovery. *Wood, supra.* Assuming without deciding that these principles apply where notice is given and the general contractor remains on the job, summary judgment was appropriate because Owners failed to present any evidence that they incurred expenses to repair work performed while Premier was the general contractor or to finish the house. Instead, the only evidence is that while they obtained an estimate for the cost of completion, they instead sold the unfinished house to third parties for an undisclosed sum. There is no evidence Owners incurred any "abandonment" damages.

## CONCLUSION

Owners owed Premier $204,000. Owners, however, (over)paid Premier a total $254,671.83: $135,740 before Subcontractor's lien was perfected and $118,931.83 after. Pursuant to § 29–5–50, Owners are only entitled to credit the

---

3. Again, it is important to recall that Premier remained the general contractor until May 2008. As Subcontractor concedes, the result might well be different had Owners actually fired Premier around the time they learned of its failure to pay Subcontractor.

$135,740 against the $204,000 due Premier. The total due to Premier ($204,000) less the Owners' proper payments ($135,740) leaves $68,260 available for liens. Subcontractor's lien is $66,862.16, less than the $68,260 available, and therefore Subcontractor is entitled to its entire lien.

The summary judgment order is **AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.